## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

FEDERAL LAW ENFORCEMENT
OFFICERS ASSOCIATION, NEW
JERSEY FRATERNAL ORDER OF
POLICE, RICHARD BOWEN,
JOSEPH JAKUBIEC, and
CHRISTOPHER MARTINEZ,

               Plaintiffs,

    v.

GURBIR GREWAL, in his official
capacity as Attorney General of the
State of New Jersey, and PATRICK
J. CALLAHAN, in his official
capacity as Superintendent of the
New Jersey State Police,

               Defendants.

Case No. 3:20-cv-05762-MAS-TJB

**BRIEF OF PROPOSED AMICI CURIAE THE NATIONAL RIFLE
ASSOCIATION OF AMERICA, INC. AND ASSOCIATION OF NEW
JERSEY RIFLE & PISTOL CLUBS, INC. IN OPPOSITION TO THE
DEFENDANTS' MOTION TO DISMISS**

DANIEL L. SCHMUTTER
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, NJ 07450
(201) 967-8040
dschmutter@hartmanwinnicki.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iv

INTEREST OF AMICI.............................................................................1

INTRODUCTION....................................................................................3

STATEMENT OF THE CASE .................................................................4

   I.  LEOSA................................................................................................4

   II. New Jersey Firearms Law. ...............................................................5

   III. Plaintiffs' lawsuit. ...........................................................................6

STANDARD OF REVIEW .......................................................................7

ARGUMENT.............................................................................................8

   I.  DEFENDANTS   MISUNDERSTAND   LEOSA,   AND   THEIR
      ARGUMENTS MISS THE MARK. ...................................................8

      A. LEOSA compliant identification does not need to come from the
         State of New Jersey. ....................................................................8

      B. The legislative history shows that there is more to LEOSA than
         conferring out-of-state carry benefits to qualified officers. .......................12

   II. LEOSA  CONFERS  AN  ENFORCEABLE  RIGHT  TO  CARRY  A
      CONCEALED FIREARM UNDER SECTION 1983...........................................14

      A. Congress intended LEOSA to benefit Plaintiffs...........................................16

      B. LEOSA's carry rights are not vague or amorphous. ...................17

      C. LEOSA unambiguously requires the states to yield to the right of a
         properly credentialed QRLEO to carry a concealed firearm.......................18

      D. LEOSA's carry rights are unambiguously conferred on qualified
         officers who possess the required identification. .........................................20

E. New Jersey cannot rebut the presumption that an enforceable right exists under LEOSA. ...................................................................21

F. There is no anticommandeering-doctrine issue here. ..................................22

III.   PLAINTIFFS ADEQUATELY PLEADED A PREEMPTION CLAIM. ..........25

A. The Court has Jurisdiction to hear Plaintiffs' preemption claim. ...............25

B. Congress preempted New Jersey from regulating QRLEOs under LEOSA. ...................................................................................................26

CONCLUSION ...................................................................28

CERTIFICATE OF SERVICE ...................................................................29

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009)…………………………………………………………7

*Ass'n of New Jersey Rifle & Pistol Clubs Inc. v. Port Auth. of New York & New Jersey*,
     730 F.3d 252 (3d Cir. 2013)………………………………………..14, 15, 21

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007)……………………………………………………..7, 16

*Blessing v. Freestone*,
     520 U.S. 329 (1997)…………………………………….....14, 15, 16, 17, 18, 21

*Burban v. City of Neptune*,
     920 F.3d 1274 (11th Cir. 2019)………………………………………....5, 19, 20

*Burtch v. Milberg Factors, Inc.*,
     662 F.3d 212 (3d Cir. 2011)…………………………………………………....7

*Carey v. Throwe*,
     957 F.3d 468 (4th Cir. 2020)………………………………....8, 14, 16, 19

*Cisneros v. Alpine Ridge Grp.*,
     508 U.S. 10 (1993)…………………………………………………………27

*DuBerry v. D.C.*,
     824 F.3d 1046 (D.C. Cir. 2016)………………………..…………18, 19, 23, 27

*F.D.I.C. v. Deglau*,
     207 F.3d 153 (3d Cir. 2000)…………………………………………………..21

*Golden State Transit Corp. v. City of Los Angeles*,
     493 U.S. 103 (1989)……………………………………………....18, 21

*Gonzaga Univ. v. Doe*,
     536 U.S. 273 (2002)……………………………………….…15, 20, 21

*Grammer v. John J. Kane Reg'l Centers-Glen Hazel,*
    570 F.3d 520 (3d Cir. 2009)…………………………………………..15, 16, 20

*Guardians Ass'n v. Civil Serv. Comm'n of City of New York,*
    463 U.S. 582 (1983)…………………………………………………………..23

*Henrichs v. Ill. Law Enforcement Training and Standards Board,*
    306 F. Supp. 3d 1049 (N.D. Ill. 2018)…………………………..8, 14, 16, 21

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997)…………………………………………..7

*In re Casaleggio,*
    420 N.J. Super. 121 (APP. DIV. 2011)……………………………………….5

*In re Fed.-Mogul Glob. Inc.,*
    684 F.3d 355 (3d Cir. 2012)…………………………………………..26

*Jankowski v. Lellock,*
    649 F. App'x 184 (3d Cir. 2016)……………………………………….7

*Johnson v. New York State Dep't of Corr. Servs.,*
    709 F. Supp. 2d 178 (N.D.N.Y. 2010)……………………………9, 10, 14

*Lewis v. Alexander,*
    685 F.3d 325 (3d Cir. 2012)…………………………………………..26

*Maio v. Aetna, Inc.,*
    221 F.3d 472 (3d Cir. 2000)…………………………………………..7

*Middlesex County Sewerage Authority v. National Sea Clammers Ass'n.,*
    453 U.S. 1 (1981)……………………………………………………….22

*Murphy v. Nat'l Collegiate Athletic Ass'n,*
    138 S. Ct. 1461 (2018)……………………………………………..22, 24, 26

*New York v. United States,*
    505 U.S. 144 (1992)…………………………………………………..24

*People v. Booth*,
    20 Misc. 3d 549 (N.Y. Co. Ct. 2008)…………………………..……11, 19

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981)…………………………………………………..18

*Pennsylvania Pharmacists Ass'n v. Houstoun*,
    283 F.3d 531 (3d Cir. 2002)………………………………………..17

*Printz v. United States*,
    521 U.S. 898 (1997)…………………………………………....22, 24

*Sabree ex rel. Sabree v. Richman*,
    367 F.3d 180 (3d Cir. 2004)………………………………………..21

*Schilling v. Rogers*,
    363 U.S. 666 (1960)………………………………………………..25

*Shaw v. Delta Air Lines*,
    463 U.S. 85 (1983)…………………………………………………26

*State v. Quinn*,
    108 N.J.L. 467 (N.J. 1932)…………………………………………17

*State v. Reams*,
    121 N.C. 556 (N.C. 1897)………………...………………………..17

*Testa v. Katt*,
    330 U.S. 386 (1947)………………………………………………..24

*United States v. Abbott*,
    574 F.3d 203 (3d Cir. 2009)………………………………………..16

*Wilder v. Virginia Hosp. Ass'n*,
    496 U.S. 498 (1990)……………………………………..17, 20, 22

*Wright v. City of Roanoke Redevelopment & Hous. Auth.*,
    479 U.S. 418 (1987)………………………………………………..18

**Statutes**

18 U.S.C. § 921……………………………………………………………...17

18 U.S.C. § 926C………………………………………4, 5, 10, 11, 16, 17, 18, 23, 25

28 U.S.C. § 1331………………………………………………………………….25

42 U.S.C. § 1396r………………………………………………………………16

42 U.S.C. § 1983………………………………………………...14, 18, 20, 22

N.J.S. 2C:39–5…………………………………………………………..….5

N.J.S. 2C:39–6………………........................................................5, 6

**Rules**

Fed. R. App. P. 29………………………………………………………1

Fed. R. Civ. P 12……………………………………………………6, 7

**Other**

70 Fed. Reg. 10673-01 (Mar. 4, 2005)………………………………………11

H.R. REP. 108-560, 2004 U.S.C.C.A.N. 805……………………………..12, 13, 19

## INTEREST OF AMICI[1]

The National Rifle Association of America, Inc. ("NRA") is a nonprofit corporation, operating under § 501(c)(4) of the Internal Revenue Code. The NRA was incorporated in the state of New York in 1871. Its principal offices and place of business are located in Fairfax, VA. The NRA's membership includes roughly 5,000,000 individuals, many of whom are current or former members of the law-enforcement community that reside in New Jersey.

In Accordance with Article II of the NRA's bylaws, its purposes and objectives include "To train members of law enforcement agencies … in marksmanship and in the safe handling and efficient use of small arms." The NRA established a Law Enforcement Division in 1960, specifically to provide the law-enforcement community with a means to certify law-enforcement firearm instructors. The NRA Law Enforcement Division also regularly advises members of the law-enforcement community on the Law Enforcement Officers Safety Act ("LEOSA").[2] And NRA instructors regularly qualify retired law-enforcement

---

[1] Amici certify that (1) no party's counsel authored any part of this brief; (2) no party's counsel contributed money to fund, prepare, or file this brief; and (3) no person other than Amici, their members, or their counsel contributed money towards this brief. *See, e.g.,* Fed. R. App. P. 29(a)(4)(E).

[2] More information about the NRA's Law Enforcement Division can be found at https://le.nra.org/.

officers under LEOSA at the NRA's range in Fairfax, VA. Accordingly, the NRA has in interest in the outcome of this case.

The Association of New Jersey Rifle & Pistol Clubs, Inc. ("ANJRPC") is a nonprofit membership corporation organized in 1936 to represent the interests of target shooters, hunters, competitors, outdoors people, and other lawful firearms owners in New Jersey. ANJRPC seeks to aid these people in every way within its power, and to support and defend the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms. ANJRPC is the largest statewide organization that is dedicated to the shooting sports and the right to keep and bear arms.

ANJRPC supports and works with the law enforcement community. It has a Law Enforcement Committee; the Committee's chair is a retired law enforcement officer and an officer of a large Policeman's Benevolent Association. The ANJRPC Executive Director educates retired police officers about the Second Amendment through Policeman's Benevolent Association events. For decades ANJRPC has allowed local law enforcement to train at no cost on its 60-acre shooting range in Highland Lakes, NJ. ANJRPC has also allowed local law enforcement to maintain a police radio tower on our property at no charge.

AMICI support the law enforcement community and their rights to carry a concealed firearm under LEOSA.

2

**INTRODUCTION**

LEOSA allows Qualified Retired Law Enforcement Officers ("QRLEO") who possess LEOSA-compliant identification from their former agency to carry a concealed firearm nationwide—irrespective of state or local law. New Jersey law generally requires retired police officers living in the state to obtain a Retired Police Officer Permit. And New Jersey believes that all retired officers residing within the state, including Plaintiffs, must obtain a Retired Police Officer Permit before they can carry a firearm concealed. New Jersey has a simple, self-created problem: it is ignoring that Plaintiffs are *federal* QRLEOs who possess LEOSA identification from the federal agencies from which they retired. Residing in New Jersey does not dilute the federally-issued identification or the rights possessed by these retired federal officers. Instead, Plaintiffs' LEOSA status and identification removes them from New Jersey's jurisdiction on these matters: under LEOSA they are legally entitled carry a concealed firearm without a state-issued permit.

Finally, while LEOSA preempts New Jersey's laws regulating the carrying of concealed firearms by QRLEOs, it does not require the state to administer a federal regulatory program. It simply immunizes federal QRLEOs, like these Plaintiffs, from the enforcement of contrary laws.

## STATEMENT OF THE CASE

### I.    LEOSA

The pertinent portion of LEOSA provides:

Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified retired law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b).

18 U.S.C. § 926C(a). Subsection (b) excludes private property on which carrying a firearm is restricted by the owner and government buildings from the places that a QRLEO may carry. 18 U.S.C. § 926C(b).

A QRLEO is someone who satisfies the seven criteria in subsection (c): he (1) separated service as a law enforcement officer in good standing; (2) was authorized by law to engage in law enforcement activities; (3) served in law enforcement "for an aggregate of 10 years or more"; (4) within the last year, met either his former agency's or his home state's active-duty-firearm-qualification standards; (5) is not unfit to carry a firearm because of his mental health; (6) is not under the influence of drugs or alcohol; and (7) is not prohibited from receiving a firearm under federal law. 18 U.S.C. § 926C(c).

Lastly, there are two types of LEOSA-compliant identification. The first is a photo identification issued by the QRLEO's former agency indicating that the individual is a QRLEO who has met the agency's "active duty standards for

4

qualification in firearms training" within the last year. 18 U.S.C. § 926C(d)(1). The second is a photographic identification issued by the QRLEO's former agency and a separate certificate, issued by either the state in which the QRLEO resides or a firearms instructor in that state who is capable of qualifying active-duty law enforcement officers in that state, indicating that the QRLEO met the state's qualification standards within the last year. 18 U.S.C. § 926C(d)(2); *see also Burban v. City of Neptune*, 920 F.3d 1274, 1277 (11th Cir. 2019) (describing the two types of identification).

## II.    New Jersey Firearms Law.

"It is illegal to carry a handgun in New Jersey without a permit." *In re Casaleggio*, 420 N.J. Super. 121, 125 (APP. DIV. 2011) (citing N.J.S. 2C:39–5(b)). The "broad prohibition" in N.J.S. 2C:39–5(b) has an exemption for "retired 'law enforcement officers.'" *Id.* (quoting N.J.S. 2C:39–6(l)). This exemption is referred to as an "RPO Permit."[3]

New Jersey courts have held that LEOSA is not an "alternate path" for QRLEOs to carry a firearm. *Casaleggio*, 420 N.J. Super. At 128. Instead, the court held that N.J.S. 2C:39–6(l)'s reference to LEOSA intended "to accommodate retired law enforcement officers from out of state who have relocated to New Jersey."[4] *Id.*

---

[3] https://www.state.nj.us/lps/njsp////firearms/rpo-initial-app.shtml.
[4] **Error! Main Document Only.**QRLEOs who have LEOSA credentials issued by their former state would not need an RPO permit.

Under this interpretation, officers who retired from an agency in New Jersey must meet the qualifications and obtain an RPO Permit under N.J.S. 2C:39–6(l). *See also* Q&A #2 Compl. (DKT. 1) Exhibit 1.

### III.  Plaintiffs' lawsuit.

Plaintiffs are federal QRLEOS who have their LEOSA identification from their former federal agencies. They are entitled to carry a firearm nationwide, including within their home state. Yet the state of New Jersey still purports to require them to obtain an RPO Permit as a condition to exercising their LEOSA rights.

In response, Plaintiffs brought a two-count claim. Count I alleges that by requiring QRLEOs with LEOSA identification to obtain an RPO Permit before they can carry a firearm, New Jersey is violating their LEOSA rights. Compl. ¶¶ 65-73. Count II alleges that Congress preempted the states from restricting QRLEOs with LEOSA identification from carrying a firearm. Compl. ¶¶ 74-89.

Defendants filed a motion to dismiss under Rule 12(b)(6). (DKT 10). Contrary to Defendants' arguments, this case is not about forcing the state of New Jersey to issue the Plaintiffs an RPO Permit or LEOSA identification. Plaintiffs do not need that permit, as they already have their LEOSA identification. This case is about Plaintiffs (and other QRLEOs with LEOSA identification) being able to carry a firearm under the authority of federal law, notwithstanding the additional requirements that New Jersey seeks to enforce under state law.

## STANDARD OF REVIEW

"A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Jankowski v. Lellock*, 649 F. App'x 184, 186 (3d Cir. 2016). To withstand a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must identify the elements of the claim, examine the factual assertions in the complaint that must be taken as true, and "'determine whether they plausibly give rise to an entitlement for relief.'" *Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). The Court may grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc*., 221 F.3d 472, 481–82 (3d Cir. 2000) (internal quotation marks omitted). And the Court may not "go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based." *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1425 (3d Cir. 1997) (citations omitted).

## ARGUMENT

**I.   DEFENDANTS MISUNDERSTAND LEOSA, AND THEIR ARGUMENTS MISS THE MARK.**

### A. LEOSA compliant identification does not need to come from the State of New Jersey.

Defendants are tilting at windmills. They materially misread LEOSA's requirements, and their arguments are entirely based on a false premise: the state of New Jersey is the only entity that can issue LEOSA identification to QRLEOs who reside in the state. Because that premise is false, none of Defendants' derivative arguments can prevail. They view this case, like many other LEOSA cases, as an attempt to compel the state to issue LEOSA identification. Not so. Plaintiffs already have their LEOSA identification. No further action is required from the state. Plaintiffs merely seek recognition of their federal LEOSA rights.

Defendants recognize that QRLEOs who possess the required identification may carry a firearm concealed. Def. Br. at 14 (DKT. 10-3) (citing *Henrichs v. Ill. Law Enforcement Training and Standards Board*, 306 F. Supp. 3d 1049, 1055 (N.D. Ill. 2018)). That is consistent with LEOSA's text, and several courts have ruled accordingly. *Henrichs*, 306 F. Supp. 3d at 1055 ("LEOSA grants a person concealed carry rights *only* if that person (1) is a 'qualified retired law enforcement officer' as defined by LEOSA and (2) 'is carrying the identification required by subsection (d)." (emphasis in original)); *Carey v. Throwe*, 957 F.3d 468, 478 (4th Cir. 2020) (Retired

8

officers who meet those two criteria "fall within LEOSA's ambit."); *Johnson v. New York State Dep't of Corr. Servs.*, 709 F. Supp. 2d 178, 184 (N.D.N.Y. 2010) ("At a minimum, LEOSA provides a federal right for qualified retired law enforcement officers who possess the requisite identification to lawfully carry concealed firearms across state lines.").

Here, Plaintiffs are QRLEOs who possess the requisite LEOSA identification. Compl. ¶¶ 48, 55, 60. Defendants concede that, at this stage, Plaintiffs' assertion that they are QRLEOs must be taken as true. Def. Br. at 4 n.1. But Defendants insist that Plaintiffs do not have the requisite identification because their identification was not "issued by the state of New Jersey." Def. Br. at 14; *see also id* at 24 ("New Jersey … requires its *own* QRLEOs to satisfy certain standards before obtaining a New Jersey identification card.") (emphasis in original). Defendants are wrong.

First, Defendants undermine their own argument and concede that the individual Plaintiffs have LEOSA identification: "nothing about New Jersey law would prohibit Plaintiffs Bowen, Jakubiec, or Martinez from traveling across state lines while carrying a concealed firearm—assuming they are, as they allege, QRLEOs *who possess LEOSA-compliant identification cards from federal law enforcement agencies*." Def. Br. at 27. (emphasis added) (citation omitted).

Defendants are presumably relying on language from cases like *Johnson*, 709 F. Supp. 2d at 184, indicating that LEOSA allows QRLEOs with identification "to

9

lawfully carry concealed firearms across state lines," when making that statement. But there is a better explanation for that language. The majority of QRLEOs are former state and local officers who do obtain their identification from their state under LEOSA. And if a state issues someone a license to carry a firearm, then obviously that state cannot prosecute that individual for carrying a firearm. But other states could prosecute that individual for carrying a firearm with an out-of-state license. LEOSA changed that by giving state and local QRLEOs the ability to carry across state lines with an identification issued by their state. But that is not the issue here. The individual Plaintiffs are not state or local QRLEOs. They are *federal* QRLEOs. Compl. ¶¶ 47, 53, 59. They have federally issued identification that allows them to carry in all states, including their home state. Not to mention that "to lawfully carry concealed firearms across state lines," *Johnson*, 709 F. Supp. 2d at 184, necessarily implies that one is lawfully carrying the firearm within the original state. It would be odd for an action to become legal only after crossing a state line, particularly given that LEOSA imposes no such requirement.

Second, contrary to Defendants' position, LEOSA plainly states that the identification must be "issued by the agency from which the individual separated from service as a law enforcement officer." 18 U.S.C. §§ 926C(d)(1)-(2). The individual Plaintiffs here retired from federal agencies: the U.S. Secret Service, U.S. Postal Inspection Service, and Homeland Security Investigations. Compl. ¶¶ 47, 53,

59. Their LEOSA identification must come from those agencies, not the state of New Jersey.[5] And if their respective agencies did not certify that the QRLEO passed the agency's active-duty firearm qualification within the last year, the QRLEO can carry a separate certificate issued "by a certified firearms instructor" in their home state that certifies the QRLEO met the state's active-duty firearm qualification within the last year. 18 U.S.C. §§ 926C(d)(2)(B). LEOSA's text is clear: the identification or the certification does not have to come from the state of New Jersey here. LEOSA further states that a Qualified Officer with identification can carry concealed— "Notwithstanding any other provision of the law of *any State or any political subdivision thereof.*" 18 U.S.C. §§ 926C(a) (emphasis added). There is no exception for the officer's home state.

A LEOSA case out of Orange County, NY, involving a Coast Guard Boarding Officer, is directly on point here. *People v. Booth*, 20 Misc. 3d 549, 551 (N.Y. Co. Ct. 2008). His vehicle was pulled over, and he produced a New York identification and vehicle registration, proof that he was a New York resident. *Id*. 550. He also had a handgun under the seat and no state-issued license to carry it. *Id*. at 551. But he did

---

[5] Guidance from the Attorney General further clarifies that federal law-enforcement agencies "shall prepare and issue a photographic identification card for qualified retired LEOs." *Office of the Deputy Attorney General; Guidance on the Application of the Law Enforcement Officers Safety Act of 2004 to Current and Retired Department of Justice Law Enforcement Officers*, 70 Fed. Reg. 10673-01, 10675 (Mar. 4, 2005)

have "two forms of photographic identification issued by the Coast Guard." *Id*. at 552. He was charged with unlawfully possessing the handgun. The charge was dismissed under LEOSA because "the defendant was a qualified law enforcement officer who possessed photographic identification issued by the Coast Guard." *Id*. at 553. Under Defendants' interpretation of LEOSA, the Coast Guard identification would be insufficient because it was not issued by the State of New York. Defendants are wrong.

Because Defendants' premise is wrong, their arguments in support of their motion to dismiss are also wrong. Unlike most LEOSA cases, this case is not about forcing the state to issue QRLEOs LEOSA identification. This case is about the state of New Jersey's intent to prosecute people like the Plaintiffs who are authorized to carry a firearm under LEOSA.

## B. The legislative history shows that there is more to LEOSA than conferring out-of-state carry benefits to qualified officers.

Defendants also incompletely identify the purpose behind LEOSA. In their view, LEOSA remedied "the fact that states need not (and often do not) recognize concealed carry permits issued by other states." Def. Br. at 2. That is partially true. The LEOSA House Report says "some States do not permit a law enforcement officer from other States to carry a concealed weapon within their borders. This legislation would allow current and retired police officers to carry a concealed weapon in *any of the 50 States*." H.R. REP. 108-560, 3-4, 2004 U.S.C.C.A.N. 805,

0-806 (emphasis added). The fact that the Report used "any of the 50 states," indicates that Congress intended LEOSA to apply to officers in their home states.

There were, however, additional reasons for enacting LEOSA in the House Report that support Plaintiffs' position. One of the many things that Congress considered was the September 11th terrorist attacks. *Id*. at 4, 806. Allowing current and retired law-enforcement officers to carry a firearm nationwide was seen as a way to increase our law-enforcement presence, "at no cost to the taxpayers," making the nation that much more prepared for future terrorist attacks. *Id*. Allowing Plaintiffs to carry under LEOSA in their home state furthers that objective.

And even more on point, the House Report noted that LEOSA "must include retired officers as well as current officers because retired officers need to be able to protect themselves and their families and because they are just as trustworthy as they were when they were employed full time." *Id*. The Report continues, "*also* … active and retired law enforcement officers often have to defend themselves outside their own State from criminals whom they have arrested." *Id*. (emphasis added). The need for that type of defense is typically much greater in their home state, which is why the House Report identifies out-of-state self-protection as an additional factor. Allowing QRLEOs like Plaintiffs to carry a firearm for self-defense in their home state with their agency-issued identification furthers LEOSA's objectives.

## II.  LEOSA CONFERS AN ENFORCEABLE RIGHT TO CARRY A CONCEALED FIREARM UNDER SECTION 1983.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). And it is the Plaintiff who "assert[s] the violation of a federal right" under section 1983. *Id.*  Again, this case is not about issuing LEOSA identification. It is about the right to carry a firearm once the QRLEO has their LEOSA identification.

Count I alleges that "LEOSA confers a federal statutory right for 'qualified retired law enforcement officers' to carry a concealed firearm anywhere in the United States with the proper identification issued from the QRLEO's former agency." Compl. ¶ 66. Several courts have confirmed that this right exists for QRLEOs who possess the identification. *Henrichs*, 306 F. Supp. 3d at 1055; *Carey*, 957 F.3d at 478; *Johnson*, 709 F. Supp. 2d at 184. Plaintiffs therefore have identified a right, as opposed to a law, and have properly stated a claim under section 1983. *Blessing*, 520 U.S. at 340.

Plaintiffs' asserted right is consistent with the Third Circuit's section 1983 jurisprudence. "Determining whether a federal statute creates a federal right enforceable under section 1983 is a two-step process." *Ass'n of New Jersey Rifle & Pistol Clubs Inc. v. Port Auth. of New York & New Jersey*, 730 F.3d 252, 254 (3d Cir. 2013). At step one, the court must look to the *Blessing* factors: "First, Congress

14

must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States, i.e., it must be couched in mandatory, rather than precatory, terms." *Id.* (quoting *Blessing,* 520 U.S. at 340–41) (internal quotations and alterations omitted). The Supreme Court "clarified the *Blessing* analysis by adding the requirement that any such right be unambiguously conferred by Congress." *Grammer v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 526 (3d Cir. 2009); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).

If the Court finds that Congress conferred a right at step one, "a rebuttable presumption arises that the statute creates a right enforceable under section 1983." *Ass'n of New Jersey Rifle & Pistol Clubs Inc.*, 730 F.3d at 254. At step two, "this presumption may be overcome if a defendant shows that Congress has either expressly or impliedly foreclosed the section 1983 remedy for that particular right." *Id.* (citing *Blessing,* 520 U.S. at 341). Plaintiffs' claim passes this test.

**A. Congress intended LEOSA to benefit Plaintiffs.**

It is clear from the statutory text that Congress intended LEOSA to benefit QRLEOs who possess LEOSA identification. 18 U.S.C. §§ 926C(a)-(c); *United States v. Abbott*, 574 F.3d 203, 206 (3d Cir. 2009) ("As in all cases of statutory interpretation, our inquiry begins with the language of the statute and focuses on Congress' intent."). "LEOSA grants a person concealed carry rights *only* if that person (1) is a 'qualified retired law enforcement officer' as defined by LEOSA and (2) 'is carrying the identification required by subsection (d).'" *Henrichs*, 306 F. Supp. 3d at 1055 (emphasis in original); *Carey*, 957 F.3d at 478. That is precisely what Count I alleges. Compl. ¶ 66.

The Complaint further alleges that the individual Plaintiffs are QRLEOs, Compl. ¶¶ 48, 54, 60, 71, and that they have their LEOSA identification, Compl. ¶¶ 48, 55, 60. These factual assertions must be taken as true at this stage. *Twombly,* 550 U.S. at 555. Plaintiffs have therefore shown that Congress intended them to be the beneficiaries of the right to carry a firearm under LEOSA. *See Grammer*, 570 F.3d at 527 (holding that the plaintiff satisfied the first *Blessing* factor because "As both a Medicaid recipient and a nursing home resident, Grammer's mother was an intended beneficiary of 42 U.S.C. § 1396r.").

**B. LEOSA's carry rights are not vague or amorphous.**

The Second *Blessing* factor requires that the asserted "rights are clearly delineated by the provisions" of the statute. *Id*. at 528 (finding that "'must provide,'" "'must maintain'" and "'must conduct'" are not vague or amorphous). That is because vague rights are "beyond the competence of the judiciary to enforce." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 509 (1990) (quotations and citations omitted); *Pennsylvania Pharmacists Ass'n v. Houstoun*, 283 F.3d 531, 540 n.15 (3d Cir. 2002).

LEOSA's carry rights are clear: a QRLEO with the required identification "may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b)." 18 U.S.C. § 926C(a). Subsection (b) allows private parties and government entities to prohibit QRLEOs from carrying on their properties when allowed by state law. 18 U.S.C. § 926C(b). There is nothing ambiguous about where a QRLEO may carry.

Moreover, LEOSA defines QRLEO, 18 U.S.C. § 926C(c), and "Firearm" is defined at 18 U.S.C. § 921(a)(3).  Further, there is more than a century of case law interpreting what it means to carry a firearm concealed. *State v. Reams*, 121 N.C. 556 (N.C. 1897) (remanding with instructions on concealment); *State v. Quinn*, 108 N.J.L. 467, 469 (N.J. 1932) (describing a firearm being "carried . . . as to be plainly seen" as "[t]he mere carrying of a weapon without concealment"). There is nothing

vague or amorphous about any of this: "the LEOSA right to carry is not the type of 'vague and amorphous' right that is 'beyond the competence of the judiciary to enforce.'" *DuBerry v. D.C.,* 824 F.3d 1046, 1053 (D.C. Cir. 2016) (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989)).

### C. LEOSA unambiguously requires the states to yield to the right of a properly credentialed QRLEO to carry a concealed firearm.

Under the third *Blessing* factor, "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms" to create a right enforceable under § 1983. *Blessing,* 520 U.S. at 341 (citation omitted). "[A] congressional preference … [or] 'nudge' in the preferred directio[n]" is not enough. *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423 (1987) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 19 (1981)).

It is a mistake to focus on LEOSA's use of "may" rather than "shall" when stating that the officers "may carry a concealed firearm," as Defendants insist. 18 U.S.C. § 926C(a). Using "shall" there would impose an obligation on the officers— it would require them to carry a firearm at all times. *Blessing* was clear: "the statute must unambiguously impose a binding obligation *on the States*." 520 U.S. at 341 (emphasis added).

Instead, the focus should be placed on the first clause: "Notwithstanding any other provision of the law of any State or any political subdivision thereof." 18 U.S.C. § 926C(a). "Congress used categorical language in the 'notwithstanding'

clause of subsection (a), to preempt state and local law to grant qualified law enforcement officers the right to carry a concealed weapon." *DuBerry*, 824 F.3d at 1052; *see also id*. at 1053 (describing LEOSA's effect as "categorical preemption"). The legislative history further supports this: "H.R. 218, the 'Law Enforcement Officers Safety Act of 2003,' would override State laws and mandate that retired and active police officers could carry a concealed weapon anywhere within the United States." H.R. REP. 108-560, 3, 2004 U.S.C.C.A.N. 805. And state courts have held that qualified officers are "exempt from prosecution … as a result of LEOSA." *Booth,* 20 Misc.3d at 552. LEOSA is much more than a preference or a nudge. It categorically compels states to recognize the right of qualified officers to carry a firearm notwithstanding the law of a particular state.

Defendants cite several cases holding that Congress did not confer an enforceable right under LEOSA. Def. Br. at 12 (citing *Carey*, 957 F.3d 468; *Burban*, 920 F.3d 1274). But as outlined above, the right at issue in those cases was the right to be issued the identification—by the state—not the right for a QRLEO who already has the identification to carry a firearm. *Carey*, 957 F.3d at 479 (Carey "seeks relief under § 1983 to get his LEOSA card reinstated."); *Burban*, 920 F.3d at 1279 ("no provision of § 926C, read individually or together, 'unambiguously impose[s] a binding obligation on the States' to give agency-issued, LEOSA-compliant identification to retired law enforcement officers."). That is not the case here. Every

19

individual Plaintiff already has his LEOSA identification from his respective federal agency. Compl. ¶¶ 48, 55, 60. And the *Burban* court expressly noted that the "case does not require us to reach the question of whether LEOSA might create any other enforceable federal rights, so we do not." 920 F.3d at 1279 n.1. Those cases are irrelevant to the right that Plaintiffs assert in Count I.

Defendants further claim that because there is no reference to § 1983 in LEOSA, Congress did not intend to confer a right. Def. Br. at 13. But § 1983 recognizes liability for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws"; it does not require laws to reference § 1983, and they generally do not. For instance, in *Wilder*, the Supreme Court held that the Boren Amendment to the Medicaid Act created an enforceable right under § 1983. 496 U.S. at 501. Amici can find no mention of § 1983 in the Medicaid Act. Defendants' arguments, again, miss the mark. LEOSA unambiguously binds the states.

### D. LEOSA's carry rights are unambiguously conferred on qualified officers who possess the required identification.

The final factor requires the court "to make certain that the [rights-creating] language is phrased in terms of the persons benefitted, not in terms of a general 'policy or practice.'" *Grammer*, 570 F.3d at 528 (quoting *Gonzaga Univ.,* 536 U.S. at 287). Being in the "'zone of interest' … is not enough." *Id*. Simply put, the "rights-creating language must clearly impart an individual entitlement, and have an

'unmistakable focus on the benefitted class.'" *Id*. (quoting *Gonzaga Univ.*, 536 U.S. at 283). Title VI and IV's prohibitions on discrimination on the bases of race, color, national origin, and sex "exemplify rights-creating language." *Id*.

It is unmistakable who benefits from LEOSA: QRLEOs who possess the requisite identification from their former agency. *Henrichs*, 306 F. Supp. 3d at 1055. Anyone who meets these criteria cannot be prosecuted for carrying a concealed firearm under state or local law.

### E. New Jersey cannot rebut the presumption that an enforceable right exists under LEOSA.

Because LEOSA satisfies the *Blessing* factors, "a rebuttable presumption arises that the statute creates a right enforceable under section 1983." *Ass'n of New Jersey Rifle & Pistol Clubs Inc.*, 730 F.3d at 254. "[T]his presumption may be overcome if a defendant shows that Congress has either expressly or impliedly foreclosed the section 1983 remedy for that particular right." *Id*. (citing *Blessing,* 520 U.S. at 341). "[A] court should 'not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy' for deprivation of an unambiguously conferred right." *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 193 (3d Cir. 2004) (citing *Golden State Transit Corp.*, 493 U.S. at 107).

Defendants did not make this argument in their opening brief and have therefore waived it. *F.D.I.C. v. Deglau*, 207 F.3d 153, 169 (3d Cir. 2000). But they could not meet their burden if they tried. Congress has not expressly precluded

Plaintiffs from bringing a section 1983 claim to enforce their rights under LEOSA. "In the absence of such an express provision, … private enforcement foreclosed *only* when the statute itself creates a remedial scheme that is 'sufficiently comprehensive … to demonstrate congressional intent to preclude the remedy of suits under § 1983.'" *Wilder*, 496 U.S. at 521 (citing *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n.*, 453 U.S. 1, 20 (1981)) (second alteration in original) (emphasis added). LEOSA lacks a remedial scheme, and therefore the presumption that an enforceable right exists under section 1983 cannot be rebutted. Plaintiffs have stated a claim.

### F.  There is no anticommandeering-doctrine issue here.

As stated above, the right at issue here is the right for QRLEOs who already have their LEOSA identification from their federal agency to carry a firearm—not the right to be issued identification by the state of New Jersey. Accordingly, there is no Tenth Amendment anticommandeering-doctrine issue here.

"The anticommandeering doctrine … is simply the expression of a fundamental structural decision incorporated into the Constitution, *i.e.,* the decision to withhold from Congress the power to issue orders directly to the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1475 (2018). At the core of the doctrine, "'The Federal Government … may not compel the States to enact or administer a federal regulatory program.'" *Printz v. United States*, 521 U.S. 898, 926

(1997) (citation omitted) (holding that Congress could not compel local law-enforcement officers to administer background checks for firearm purchases). Accordingly, many courts have held that the states do not have to issue LEOSA identification to state law-enforcement officers. Def. Br. at 16-20 (collecting authorities). But the anticommandeering doctrine does not apply here for several reasons.

First, the individual Plaintiffs are retired *federal* officers who have LEOSA identification from their respective federal agencies. Compl. ¶¶ 47-48, 53, 55, 59-60. And they can qualify annually at their own expense by meeting the standards of their former agency or "by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State…." 18 U.S.C. § 926C(d)(1), (2)(B). If the state doesn't have any qualification standards, then the individual can qualify by an instructor who certifies that the individual met the "standards set by any law enforcement agency within that State." 18 U.S.C. § 926C(d)(2)(B)(II). The state of New Jersey is not being asked to issue any identification or to qualify any individual here. And Congress can absolutely commandeer federal agencies; a federal "agency is itself a creature of statute." *Guardians Ass'n v. Civil Serv. Comm'n of City of New York,* 463 U.S. 582, 614 (1983); *see also DuBerry*, 824 F.3d at 1057 (the anticommandeering doctrine does not apply to the District of Columbia because it is not a state).

Second, when reviewing the anticommandeering doctrine, the Supreme Court has repeatedly noted that "[t]he Constitution … 'confers upon Congress the power to regulate individuals, not States.'" *Murphy*, 138 S. Ct. at 1476 (quoting *New York v. United States*, 505 U.S. 144, 166 (1992)). The essence of LEOSA is that it allows certain individuals to carry a firearm. It does not impose affirmative duties upon the states to administer a federal regulatory scheme. The obligation it imposes on the states is *to refrain* from enforcing state laws that conflict with the Congress's intent to empower QRLEOs possessing proper identification to carry concealed firearms in all 50 states. As explained in more detail below, this is a matter of federal *preemption*, not federal commandeering.

Nor is there an issue with state courts applying LEOSA: "state courts cannot refuse to apply federal law—a conclusion mandated by the terms of the Supremacy Clause ('the Judges in every State shall be bound [by federal law]')." *Printz*, 521 U.S. at 928–29 (quoting *Testa v. Katt*, 330 U.S. 386, 389 (1947) (alteration in original)).

And third, the Supreme Court noted three purposes behind the anticommandeering doctrine: (1) protecting the separation of powers between the states and federal government; (2) "promot[ing] political accountability," i.e., letting the voter know who is behind the policy; and (3) "prevent[ing] Congress from shifting the costs of regulation to the States." *Murphy*, 138 S. Ct. at 1477. As noted

24

above, LEOSA regulates individuals, not states. It does not require the states to take affirmative action here because the Plaintiffs are former *federal* officers. It is also clear as a political matter who passed LEOSA and who issues the retired federal officers their identification. Voters would therefore know exactly who to voice their concerns to, if they were to take issue with LEOSA. And lastly, there are no costs placed on the states here. The identification comes from the federal agencies, and the officers must qualify annually at their own expense. 18 U.S.C. § 926C(c)(4). LEOSA is entirely consistent with the purposes behind the anticommandeering doctrine.

### III.   PLAINTIFFS ADEQUATELY PLEADED A PREEMPTION CLAIM.

#### A. The Court has Jurisdiction to hear Plaintiffs' preemption claim.

In a footnote, Defendants claim that "Count II must be dismissed because the Declaratory Judgment Act does not provide an independent source of jurisdiction." Def. Br. at 21 n.5 (citing *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). Defendants' argument is, again, off target. Count II is a preemption claim; it argues that Congress preempted New Jersey law through LEOSA. Compl. ¶¶ 75-80. Count II arises under the Supremacy Clause, not the Declaratory Judgment Act. Compl. ¶ 2 ("This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the United States Constitution.") "'A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute

which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.'" *Lewis v. Alexander*, 685 F.3d 325, 346 (3d Cir. 2012) (quoting *Shaw v. Delta Air Lines,* 463 U.S. 85, 96 n.14 (1983)). The Court absolutely has jurisdiction to hear this claim.

## B. Congress preempted New Jersey from regulating QRLEOs under LEOSA.

"Preemption is based on the Supremacy Clause…. It specifies that federal law is supreme in case of a conflict with state law." *Murphy*, 138 S. Ct. at 1479. There is a presumption against preemption in areas where the states have traditionally regulated, but that "presumption may be overcome … where 'a Congressional purpose to preempt ... is clear and manifest.'" *In re Fed.-Mogul Glob. Inc.,* 684 F.3d 355, 365 (3d Cir. 2012) (citation omitted) (second alteration in original). LEOSA expressly preempts New Jersey law as it pertains to QRLEOs' ability to carry a firearm.[6]

Congress's intention to preempt state law via LEOSA's notwithstanding clause is crystal clear. "[A] notwithstanding clause clearly signals the drafter's intention that the provisions of the notwithstanding section override conflicting provisions"; "a clearer statement is difficult to imagine." *Fed.-Mogul Glob. Inc.*, 684

---

[6] Again, this case is not about issuing identification to QRLEOs who retired from state and local agencies like Defendants' claim throughout their brief.

F.3d at 369 (quoting *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 16 (1993)) (internal quotations and alterations omitted). Indeed, the D.C. Circuit held that "Congress used categorical language in the 'notwithstanding' clause of subsection (a), to preempt state and local law to grant qualified law enforcement officers the right to carry a concealed weapon." *DuBerry*, 824 F.3d at 1052; *see also id.* at 1053 (describing LEOSA's effect as "categorical preemption"). Thus, Congress preempted state and local laws to the extent that they purport to restrict the right of QRLEOs with identification to carry a firearm.

Plaintiffs are QRLEOs with LEOSA identification issued by their former federal agencies. Just as "New Jersey concededly could not—and does not— prosecute a QRLEO from another state who possesses a valid identification card issued by that state," Def. Br. at 24, it cannot prosecute a QRLEO with a federal identification card, regardless of which state he lives in. Plaintiffs identify several conflicts between New Jersey's RPO Permit standards and LEOSA. Compl. ¶ 80. Plaintiffs undoubtedly stated a preemption claim here.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

Dated this 4th day of September, 2020.    Respectfully submitted


/s/ Daniel L. Schmutter
Daniel L. Schmutter

DANIEL L. SCHMUTTER
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, NJ 07450
(201) 967-8040
dschmutter@hartmanwinnicki.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the District of New Jersey by using the Courts CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Daniel L. Schmutter
Daniel L. Schmutter