**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky
Nicholas C. Harbist
New Jersey Resident Partners
Michael R. Darbee
Blair A. Gerold
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-2646
Facsimile: (609) 897-7286
Orlofsky@BlankRome.com
Harbist@BlankRome.com
MDarbee@BlankRome.com
BGerold@BlankRome.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GURBIR GREWAL, in his official capacity as Attorney General of the State of New Jersey, et al., <br><br> Defendants. | Civil Action No. 3:20-cv-05762-MAS-TJB <br><br> **Honorable Michael A. Shipp, U.S.D.J.** <br><br> **BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> **Oral Argument Requested** <br><br> **Return Date: June 7, 2021** |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND.................................................................2

A.    The Unambiguous Federal Law .................................................2

    i.    LEOSA "Qualification".................................................3

    ii.   LEOSA "Identification"................................................3

    iii.  LEOSA's Right to Carry................................................4

    iv.   LEOSA's Legislative History ........................................4

B.    New Jersey's Conflicting Laws.................................................6

C.    New Jersey's Enforcement Policies Underscore the Conflict
    with Federal Law.......................................................................7

D.    Plaintiffs Are Entitled to Carry a Firearm Under LEOSA but
    Are Prevented from Doing So Because of New Jersey Law. .............10

    i.    Richard Bowen........................................................10

    ii.   Joseph Jakubiec.......................................................11

    iii.  Christopher Martinez ................................................12

    iv.   The Federal Law Enforcement Officers Association and
    the New Jersey Fraternal Order of Police.................................13

PROCEDURAL HISTORY...................................................................13

ARGUMENT .....................................................................................15

A.    Legal Standard.........................................................................15

B.    LEOSA Preempts New Jersey Law. ..................................................15

    i.    LEOSA Expressly Preempts New Jersey Law Because It
    Applies "Notwithstanding" State Law to the Contrary. ...........16

        a.    LEOSA Preempts State and Local Laws.......................16

        b.    LEOSA's Preemption Applies to State and Local
        Laws Affecting Whether a QRLEO with LEOSA
        Identification May Carry a Firearm................................18

        c.    LEOSA Preempts New Jersey Law................................19

ii.    LEOSA Impliedly Preempts New Jersey Law Because Imposing More Onerous Requirements on the Exercise of a Federal Right Interferes with Congress's Purposes and Objectives.................................................................................21

iii.   The State Cannot Justify Its Disregard for Federal Law. .........22

    a.    LEOSA Constitutionally Regulates Intrastate Possession of a Firearm That Traveled in Interstate Commerce....................................................................23

    b.    LEOSA Does Not Violate the Anticommandeering Doctrine. ........................................................................25

C.    Plaintiffs Are Entitled to Judgment Under 42 U.S.C. § 1983.............27

CONCLUSION .........................................................................................32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstrong v. Exceptional Child Ctr., Inc.*,
　575 U.S. 320 (2015).........................................................................................15

*Blessing v. Freestone*,
　520 U.S. 329 (1997)...................................................................................28, 29

*Burban v. City of Neptune Beach*,
　920 F.3d 1274 (11th Cir. 2019) ....................................................17, 29, 31, 32

*Carey v. Throwe*,
　957 F.3d 468 (4th Cir. 2020) .................................................................*passim*

*Chamber of Commerce of U.S. v. Whiting*,
　563 U.S. 582 (2011).........................................................................................16

*Cipollone v. Liggett Grp., Inc.*,
　505 U.S. 504 (1992).........................................................................................16

*Cisneros v. Alpine Ridge Grp.*,
　508 U.S. 10 (1993)...........................................................................................17

*Cole v. Monroe Cnty.*,
　359 F. Supp. 3d 526 (E.D. Mich. 2019) ....................................................28, 31

*D'Aureli v. Harvey*,
　No. 1:17-cv-00363, 2018 WL 704733 (N.D.N.Y. Feb. 2, 2018) ................29, 31

*Del. Cnty., Pa. v. Fed. Hous. Fin. Auth'y*,
　747 F.3d 215 (3d Cir. 2014) ............................................................................26

*Duberry v. District of Columbia*,
　824 F.3d 1046 (D.C. Cir. 2016)...............................................................*passim*

*Farina v. Nokia Inc.*,
　625 F.3d 97 (3d Cir. 2010) ..............................................................................16

*Felder v. Casey*,
　487 U.S. 131 (1988)...................................................................................22, 27

*Gibbons v. Ogden*,
  9 Wheat. 1 (1824) ............................................................................................15

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002)..........................................................................................28

*Halsey v. Pfeiffer*,
  750 F.3d 273 (3d Cir. 2014) ...........................................................................27

*Henrichs v. Ill. Law Enforcement Training & Standards Bd.*,
  306 F. Supp. 3d 1049 (N.D. Ill. 2018)........................................................29, 31

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*,
  471 U.S. 707 (1985)..........................................................................................15

*Hines v. Davidowitz*,
  312 U.S. 52 (1941)............................................................................................21

*In re Casaleggio*,
  18 A.3d 1082 (N.J. Super. Ct. App. Div. 2011) ...............................................7

*In re Federal-Mogul Global Inc.*,
  684 F.3d 355 (3d Cir. 2012) ...........................................................................17

*In re Wheeler*,
  81 A.3d 728 (N.J. Super. Ct. App. Div. 2013) ..................................................7

*Johnson v. N.Y. State Dept. of Corr. Servs.*,
  709 F. Supp. 2d 178 (N.D.N.Y. 2010).........................................................29, 31

*Lewis v. Alexander*,
  685 F.3d 325 (3d Cir. 2012) ...........................................................................22

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996).........................................................................................18

*Moore v. Trent*,
  No. 09-C-1712, 2010 WL 5232727 (N.D. Ill. Dec. 16, 2010) .........................26

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992).........................................................................................18

*Mpras v. District of Columbia*,
  74 F. Supp. 3d 265 (D.D.C. 2014).................................................................29, 31

*Murphy v. NCAA*,
  138 S. Ct. 1461 (2018)................................................................................15, 26

*New York v. United States*,
  505 U.S. 144 (1992)...........................................................................................25

*Printz v. United States*,
  521 U.S. 898 (1997)...........................................................................................25

*Reno v. Condon*,
  528 U.S. 141 (2000)....................................................................................23, 26

*Sabree ex rel. Sabree v. Richman*,
  367 F.3d 180 (3d Cir. 2004) ............................................................................29

*Scarborough v. United States*,
  431 U.S. 563 (1977)...........................................................................................25

*Schneyder v. Smith*,
  653 F.3d 313 (3d Cir. 2011) ............................................................................27

*United States v. Gov't of V.I.*,
  363 F.3d 276 (3d Cir. 2004) ..............................................................................8

*United States v. Morrison*,
  529 U.S. 598 (2000)...........................................................................................25

*United States v. Singletary*,
  268 F.3d 196 (3d Cir. 2001) ............................................................................25

**Statutes**

18 U.S.C. § 922(g)(1).............................................................................................25

18 U.S.C. § 926A....................................................................................................23

18 U.S.C. § 926C. ..........................................................................................*passim*

18 U.S.C. § 3056.....................................................................................................10

18 U.S.C. § 3061.....................................................................................................11

28 U.S.C. § 517 .................................................................14

40 U.S.C. § 1315 ...............................................................12

42 U.S.C. § 1983 ..........................................................*passim*

N.J.S.A. 2C:39-6(l) ........................................................7, 8

N.J.S.A. § 2C:39-3(f) ..................................................20, 21

N.J.S.A. § 2C:39-5 ...................................................1, 21, 27

N.J.S.A. § 2C:39-5(b) .......................................................6

N.J.S.A. § 2C:39-6 ..........................................................21

N.J.S.A. § 2C:39-6(l) .................................................*passim*

N.J.S.A. § 2C:58-3(c)(5) ...............................................6, 20

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................15

H.R. Rep. No. 108-560 (2004) ......................................5, 22

H.R. Rep. No. 108-560, 2004 WL 5702383 (2004) .............4, 5

National Defense Authorization Act for Fiscal Year 2013, Pub. L.
112-239, 126 Stat. 1632 (2013) ............................................5

S. Rep. No. 108-29, 2003 WL 1609540 (2003).........................4, 5, 19, 22

## **INTRODUCTION**

This case requires the Court to resolve a direct conflict between federal and New Jersey law.

- The federal Law Enforcement Officer Safety Act ("***LEOSA***"), 18 U.S.C. § 926C, is unambiguous: "notwithstanding" any contrary law, any "qualified retired law enforcement officer" with "identification" "may carry a concealed firearm" anywhere in the United States.

- New Jersey law (N.J.S.A. § 2C:39-5 and -6(l)) does not recognize LEOSA as a standalone right.  Instead, it requires any LEOSA-qualified officers residing in New Jersey to obtain a state-specific permit, pay a fee, meet an age limit, and undertake more frequent firearms certifications than required by LEOSA, before they may carry a concealed firearm in the State; and it permits the Superintendent of State Police complete discretion to deny an otherwise qualified officer from obtaining a state permit.  If the officer fails to obtain such a permit, they can be prosecuted for unlawful possession of a firearm.

- In response to this lawsuit, New Jersey just changed its enforcement policy, acknowledging LEOSA's right to carry for retired federal and out-of-state law enforcement officers residing in New Jersey, but not in-state retirees from a New Jersey agency.  Nevertheless, New Jersey's law did not change, and its enforcement policy can change at any time.

But LEOSA makes no distinction between federal, out-of-state, and in-state retirees. As the United States has emphasized, under LEOSA "'qualified retired law enforcement officers' who possess 'the identification required by subsection (d)' of 18 U.S.C § 926C 'may carry a concealed firearm,' and use hollow-point bullets with that firearm, '[n]otwithstanding any other provision of the law of any state.'"  ECF No. 21 at 7.  When a conflict like this arises, the Supremacy Clause provides a clear

decisional rule: LEOSA is the "supreme Law of the Land," and New Jersey's conflicting statute is invalid.

Plaintiffs, along with all qualified retired federal, state, and local law enforcement officers, have the right to carry a concealed firearm in New Jersey. Despite this, the State can prosecute them for carrying a firearm unless they abide by its more onerous standards—effectively ignoring federal law. This is a textbook example of preemption: a federal law confers a right to carry and a state law burdens that right. Accordingly, the Court must enter summary judgment, enjoin the State from enforcing its laws, and declare those laws unconstitutional.

## FACTUAL BACKGROUND

### A.    The Unambiguous Federal Law

This case is about the meaning of one straightforward sentence in a federal statute, commonly known as "*LEOSA*." LEOSA states:

> Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified retired law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b).

18 U.S.C. § 926C(a). The statute is made up of three relevant parts: (1) "qualifications"; (2) "identification"; and (3) the right to carry a concealed firearm.

2

i.   LEOSA "Qualification"

Under LEOSA, a person is "qualified" to carry a concealed firearm if they

meet seven objective criteria.  Those criteria are as follows:

(1) the individual separated from service in good standing;

(2) the individual had law enforcement powers during service;

(3) the individual served at least ten years or separated due to a service-related disability after completing a probationary period;

(4) the individual met active duty firearms training standards within the last year;

(5) the individual is not disqualified for reasons related to mental health;

(6) the individual is not intoxicated while carrying a firearm; and

(7) the individual is not prohibited by Federal law from carrying a firearm.

*See id.* § 926C(c)(1)-(7).  A person who meets these seven criteria is commonly

known as a "***QRLEO***."

ii.   LEOSA "Identification"

Under LEOSA, the "identification" required has two parts: (1) a photographic

identification, and (2) a certification that the officer met active duty firearms

standards from their former agency or state of residence within the past year.  *See*

*id.* § 926C(d).  These parts can either be from the officer's former agency, *id.* §

926C(d)(1), or from the officer's former agency and a State firearms instructor, *id.*

§ 926C(d)(2).

### iii.   LEOSA's Right to Carry

Under LEOSA, if a retired law enforcement officer is "qualified" and has

"identification," they "may carry a concealed firearm," "[n]otwithstanding any other

provision of the law of any State or any political subdivision thereof." *Id.* § 926C(a).

The right to carry a firearm includes ammunition that is "not expressly prohibited by

Federal law or subject to the provisions of the National Firearms Act," *id.* §

926C(e)(1)(B), including hollow point ammunition.  The United States' position, to

which the State has no answer, is that "LEOSA means exactly what it says."  ECF

No. 21 at 1.

### iv.   LEOSA's Legislative History

Congress passed LEOSA in 2004 in the wake of the "9/11" tragedy with

bipartisan support.[1]  The legislative history explains that "[l]aw enforcement officers

are never 'off-duty'" when upholding law and order in their communities.  S. Rep.

No. 108-29, 2003 WL 1609540, at *4 (2003).  Even after retirement, they are

"target[s]" to "vindictive criminals" with "long and exacting memories."  Congress

thus sought to allow retired law enforcement officers to protect themselves and their

families, and to respond to crimes in their communities.  *Id.*

---

[1]      These events dramatically altered the country's approach to domestic and
international terrorism and undoubtedly weighed on Congress when it considered
LEOSA.  Proponents of LEOSA argued that the law would help protect the country
in the wake of September 11.  H.R. Rep. No. 108-560, 2004 WL 5702383, at *4
(2004).

4

Before LEOSA there was a "complex patchwork" of state and local laws "govern[ing] the carrying of concealed firearms for current and retired law enforcement officers." *Id.* A key feature of LEOSA is to "override State laws," H.R. Rep. No. 108-560, 2004 WL 5702383, at *3 (2004), and establish "national measures of uniformity and consistency," S. Rep. No. 108-29, at *4 (2003), so that "retired and active police officers could carry a concealed weapon anywhere within the United States." H.R. Rep. No. 108-560, at *3 (2004). Tellingly, the House Judiciary Committee rejected a proposed amendment that would have given states discretion to "opt-out" of LEOSA's national standard. *See* H.R. Rep. No. 108-560, at *46 (2004) (opposing proposed amendment because it would "give us the same inconsistent patchwork of coverage that exists today"). Although Congress acknowledged LEOSA's preemptive effect and its impact on state's rights, it passed LEOSA with bipartisan support in order to create national uniformity.[2]

---

[2]    Congress amended LEOSA in 2010 and 2013. Each amendment expanded, not diminished, the rights under LEOSA, showing Congress's continuing commitment to empowering QRLEOs to protect themselves and their communities. *See* Law Enforcement Officers Safety Act Improvements Act of 2010, Pub. L. 111-272, 124 Stat. 2855 (2010) (expanding definition of "firearm"; reducing aggregate years of service from 15 to 10; extending privileges to additional categories of law enforcement officers); National Defense Authorization Act for Fiscal Year 2013, Pub. L. 112-239, 126 Stat. 1632 (2013) (expanding LEOSA privileges to members of the military).

### B.   New Jersey's Conflicting Laws

New Jersey law ignores the national right to carry a concealed firearm embodied in LEOSA. Instead, its carry permit scheme is precisely the type of parochial law that Congress sought to eradicate when it passed LEOSA.

In New Jersey, it is unlawful to carry a firearm without a state-issued permit. N.J.S.A. § 2C:39-5(b). Being a QRLEO with LEOSA identification is no exception. Under this statute, a New Jersey resident QRLEO can only carry a firearm if they obtain an entirely separate, state-specific Retired Police Officer ("RPO") permit. *See id.* § 2C:39-6(l).

The RPO permit is not the same thing as LEOSA identification. To receive an RPO permit, the individual must meet the State's more onerous requirements, including:

(a) submitting an application and paying a fee;

(b) being seventy-five or younger;

(c) qualifying semi-annually to use the firearm for which the RPO permit was sought; and

(d) not carrying hollow point ammunition or firearms not registered with the State, which could preclude QRLEOs from carrying the weapons they used while on active duty, even if they recently qualified to use that weapon.

*Id.* (RPO requirements); *id.* § 2C:39-3f(1) (prohibition on hollow points).

And even if a QRLEO meets these requirements, the Superintendent of State Police has broad discretion to deny an RPO permit application. *See, e.g.*, *id.* § 2C:58-

3(c)(5) ("No handgun permit . . . shall be issued . . . [t]o any person where the issuance would not be in the interest of the public health, safety or welfare."), *incorporated by reference in* N.J.S.A. § 2C:39-6(l).  If the Superintendent denies an RPO permit application as not in the "interest of the public health, safety or welfare," the officer's only recourse is to file an appeal in New Jersey state court.  *Id.* § 2C:39-6(l)(5).

Even New Jersey state courts have interpreted New Jersey law as a distinct obstacle to the categorical right to carry under LEOSA.  *See, e.g.*, *In re Wheeler*, 81 A.3d 728, 763 (N.J. Super. Ct. App. Div. 2013) ("Congress has expanded the scope of LEOSA in ways that are inconsistent with N.J.S.A. 2C:39-6(l)."); *In re Casaleggio*, 18 A.3d 1082, 1086 (N.J. Super. Ct. App. Div. 2011) ("[T]he reference to LEOSA in N.J.S.A. 2C:39-6(l) . . . is intended to accommodate retired law enforcement officers from out of state who have relocated to New Jersey.").

## C. **New Jersey's Enforcement Policies Underscore the Conflict with Federal Law.**

A simple comparison of LEOSA and New Jersey law demonstrates that a conflict is unavoidable.  New Jersey has made this Court's job even easier because its arbitrary enforcement policies *concede* the existence of this conflict.  Before April 22, 2021, New Jersey's policy was that *any* QRLEO residing in New Jersey "must meet each of the requirements of N.J.S.A. § 2C:39-6(L) in order to carry a

firearm" and, even then, could not carry hollow point ammunition ("2018 Policy").

Statement of Undisputed Material Facts ("SOMF") at ¶¶ 40-42.

On April 22, 2021, New Jersey amended its policy position—in an obvious

effort to moot the individual Plaintiffs' claims—so that a QRLEO residing in New

Jersey who retired from a federal or out-of-state law enforcement agency may carry

a firearm under LEOSA, without first obtaining an RPO permit ("2021 Policy").[3]

*Id.* at ¶¶ 44-45.  But even now, the State openly denies this same right to QRLEOs

"residing" in New Jersey who retired from a New Jersey law enforcement agency:

> Every RLEO residing in New Jersey who wishes to carry
> a firearm in New Jersey, and who separated from a New
> Jersey law enforcement agency, must meet the state
> statutory standards and obtain an RPO Permit in
> accordance with N.J.S.A. 2C:39-6(L).

*Id.* at ¶ 47.  Its only explanation for imposing additional qualification standards

beyond LEOSA is that LEOSA purportedly does not require the State to ***issue***

LEOSA identifications to its own retired law enforcement officers.  Declaration of

Nicholas C. Harbist ("Harbist Decl."), Exhibit L, ¶ 7.  Thus, the State suggests, even

a QRLEO who retired from a State agency and ***already has*** LEOSA identification is

not entitled to carry under LEOSA if they are "residing" in New Jersey; they must

still meet the State's more onerous qualifications to obtain an RPO permit.  *Id.*

---

[3]     The voluntary cessation of a challenged practice does not moot the issue, especially where, as here, the challenged conduct can reoccur unless the Court intervenes.  *See, e.g.*, *United States v. Gov't of V.I.*, 363 F.3d 276, 285 (3d Cir. 2004).

LEOSA does not support these arbitrary federal/state and resident/non-resident distinctions that the State is now peddling to the public. But two additional points bear mentioning. *First*, the State's own policy document acknowledges that LEOSA includes retired State officers when it explains LEOSA's coverage:

> LEOSA defines the term QRLEO as an individual who meets all of the following requirements:
>
> A. The individual separated in good standing from service with a public agency as a law enforcement officer ("LEO"). 18 U.S.C. 926C(c)(1). ***This includes service as a LEO for state and local law enforcement agencies***. . . .

SOMF at ¶ 47 (emphasis added).

*Second*, the 2021 Policy creates an additional layer of bureaucratic discretion in determining what it means for a retired State officer to "reside" in New Jersey. The concept of "residence" appears nowhere in LEOSA. Yet, under the 2021 Policy, a prosecutor can threaten to prosecute a retired State officer in a variety of nonobvious situations: is a QRLEO who spends weekends or summers at the New Jersey shore "residing" in New Jersey? The 2021 Policy provides no answer, and that ambiguity is a feature, not a bug, of the State's new enforcement policy. The 2021 Policy creates more problems than it purports to solve.

So, New Jersey has a problem: (1) its laws conflict with LEOSA; (2) it has openly acknowledged the conflict; (3) it has, on a whim, created arbitrary distinctions: (a) between QRLEOs who retire from federal and state law enforcement agencies, and (b) between non-resident QRLEOs and QRLEOs who "reside" in New

Jersey; and (4) it has shown that, absent this Court's intervention, it can threaten QRLEOs with prosecution by simply changing its policy documents.

**D.** **Plaintiffs Are Entitled to Carry a Firearm Under LEOSA but Are Prevented from Doing So Because of New Jersey Law.**

New Jersey law denies Plaintiffs' right to carry under LEOSA.

    i.    <u>Richard Bowen</u>

Plaintiff Richard Bowen resides in New Jersey. *Id.* at ¶ 2. In 2003, after twenty-eight years of service, he retired in good standing from the United States Secret Service. *Id.* at ¶¶ 1-2, 4. He had the power to prevent, detect, and investigate violations of federal law and to make arrests. *Id.* at ¶ 3 (citing 18 U.S.C. § 3056). He was never disqualified from service for reasons related to mental health, *id.* at ¶¶ 6-7, is not under the influence of drugs or alcohol when he carries a firearm, *id.* at ¶ 8, and is not disqualified from owning a firearm under federal law, *id.* at ¶ 9.

Bowen has a photographic identification from the United States Secret Service, certifying that he retired from that agency, *id.* at ¶ 28, and a certification stating that he met the firearm training standards for active duty officers in the State of New Jersey, *id.* at ¶ 29.

Under federal law, Bowen may carry a concealed firearm in New Jersey. He is qualified under 18 U.S.C. § 926C(c) and possesses the identification under 18 U.S.C. § 926C(d). However, to avoid prosecution under New Jersey law, Bowen was forced to obtain an RPO permit, which expires on August 29, 2021. *Id.* at ¶ 50.

Bowen will turn seventy-five years old in December of 2021, after which he will no longer be able to obtain an RPO permit.  *Id.* at ¶ 51.

      ii.    <u>Joseph Jakubiec</u>

Plaintiff Joseph Jakubiec resides in New Jersey.  *Id.* at ¶ 11.  In June 2008, after twenty-eight years of service, he retired in good standing from the United States Postal Inspection Service.  *Id.* at ¶¶ 10-11, 13.  He had the power to prevent, detect, and investigate violations of federal law and to make arrests.  *Id.* at ¶ 12 (citing 18 U.S.C. § 3061).  He was never disqualified from service for reasons related to mental health, *id.* at ¶¶ 15-16, is not under the influence of drugs or alcohol when he carries a firearm, *id.* at ¶ 17, and is not disqualified from owning a firearm under federal law, *id.* at ¶ 18.

Jakubiec has a photographic identification from the United States Postal Inspection Service, certifying that he retired from that agency, *id.* at ¶ 30, and a certification stating that he met the firearm training standards for active duty officers in the State of New Jersey, *id.* at ¶ 31.

Under federal law, Jakubiec may carry a concealed firearm in New Jersey. He is qualified under 18 U.S.C. § 926C(c) and possesses the identification under 18 U.S.C. § 926C(d).  However, Jakubiec sought and was denied an RPO permit from the State of New Jersey.  *Id.* at ¶ 52.

### iii.   Christopher Martinez

Plaintiff Christopher Martinez resides in New Jersey.  *Id.* at ¶ 20.  In August 2014, after twenty-seven years of service, he retired in good standing from the United States Department of Homeland Security, Homeland Security Investigations. *Id.* at ¶¶ 19-20, 22.  He had the power to prevent, detect, and investigate violations of federal law and to make arrests.  *Id.* at ¶ 21 (citing 40 U.S.C. § 1315).  He was never disqualified from service for reasons related to mental health, *id.* at ¶¶ 24-25, is not under the influence of drugs or alcohol when he carries a firearm, *id.* at ¶ 26, and is not disqualified from owning a firearm under federal law, *id.* at ¶ 27.

Martinez has a photographic identification from Homeland Security Investigations, certifying that he retired from that agency, *id.* at ¶ 32, and a certification stating that he met the firearm training standards for active duty officers in the State of New Jersey, *id.* at ¶ 33.

Under federal law, Martinez may carry a concealed firearm in New Jersey. He is qualified under 18 U.S.C. § 926C(c) and possesses the identification under 18 U.S.C. § 926C(d).  However, Martinez sought an RPO permit from the State of New Jersey but was never granted one, due to an issue with his application having nothing to do with his credentials.  *Id.* at ¶ 53.  Thus, he cannot carry a firearm in New Jersey without violating State law.

12

      iv.    <u>The Federal Law Enforcement Officers Association and the</u>
              <u>New Jersey Fraternal Order of Police</u>

All retired QRLEOs, even those residing in New Jersey, have rights under

LEOSA.  The Federal Law Enforcement Officers Association ("***FLEOA***") is a non-

profit organization, whose purpose includes representing the interests of both active

and retired federal and state law enforcement officers in legal and legislative matters.

*Id.* at ¶ 34.  Aside from Bowen, Jakubiec, and Martinez, FLEOA has members living

in New Jersey who are qualified under 18 U.S.C. § 926C(c) and possess the

identification under 18 U.S.C. § 926C(d), yet cannot carry a firearm in New Jersey

without an RPO permit.  *Id.* at ¶ 35.

Likewise, the New Jersey Fraternal Order of Police ("***NJFOP***") is a non-profit

organization, whose purpose includes representing the interests of retired New

Jersey State officers in legal and legislative matters.  *Id.* at ¶ 36.  Its members include

retired officers who are qualified under 18 U.S.C. § 926C(c) and possess the

identification under 18 U.S.C. § 926C(d), yet cannot carry a firearm in New Jersey

without an RPO permit.  *Id.* at ¶ 37.

## **PROCEDURAL HISTORY**

On May 11, 2020, Plaintiffs filed a two-count Complaint, alleging a violation

of 42 U.S.C. § 1983 and seeking a declaratory judgment that LEOSA preempts New

Jersey law.  ECF No. 1.  On July 27, 2020, the State filed a motion to dismiss,

contending LEOSA was not enforceable under Section 1983, that LEOSA only

allows a right to carry in interstate travel, and that LEOSA unconstitutionally commandeered the States to issue LEOSA identification. ECF No. 10. The National Rifle Association of America, Inc., and Association of New Jersey Rifle & Pistol Clubs, Inc., filed a proposed amicus brief in opposition to the State's motion to dismiss. ECF No. 15. Plaintiffs filed an opposition to the State's motion, explaining that they do not seek to compel New Jersey to issue LEOSA identifications, but simply to compel New Jersey to recognize the federal right to carry embodied in LEOSA. ECF No. 18.

On October 8, 2020, the United States filed a Statement of Interest pursuant to 28 U.S.C. § 517. ECF No. 21. The United States' position is that "LEOSA means exactly what it says." *Id.* at 1. The United States concluded that if Plaintiffs are qualified and possess LEOSA identification, then they are entitled to a declaration of their rights under LEOSA and an injunction against New Jersey law. *Id.* at 7.

Five days after receiving the United States' Statement of Interest, and before filing a reply brief, the State withdrew its motion to dismiss. ECF No. 22. The parties then exchanged paper discovery, which confirmed that all the individual Plaintiffs are "qualified" under LEOSA and have LEOSA identifications. Then, during pendency of this suit, the State of New Jersey amended its enforcement policy as to retired law enforcement officers "residing" in New Jersey, who retired from a federal or out-of-state law enforcement agency. SOMF ¶ 44; Harbist Decl., Exhibit

14

L.  However, that policy can change at any time at the whim of State officials.

Accordingly, Plaintiffs now seek a declaration of their right to carry under LEOSA

and an injunction against enforcing New Jersey's conflicting RPO law.

## ARGUMENT

### A.     Legal Standard

Under FED. R. CIV. P. 56(a), the Court "shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  This case is ripe for summary judgment,

as Plaintiffs' qualifications and identification are undisputed, and the only issues are

legal.

### B.     LEOSA Preempts New Jersey Law.

The Court should grant summary judgment on Count Two, which seeks an

injunction and declaration that LEOSA preempts New Jersey law.[4]   "The

Constitution limits state sovereignty in several ways."  *Murphy v. NCAA*, 138 S. Ct.

1461, 1475 (2018).   "[T]he Supremacy Clause . . . invalidates state laws that

'interfere with, or are contrary to,' federal law."  *Hillsborough Cnty. v. Automated*

*Med. Labs., Inc.*, 471 U.S. 707, 713 (1985) (quoting *Gibbons v. Ogden*, 9 Wheat. 1,

---

[4]     Because Plaintiffs seek to enjoin New Jersey from enforcing its preempted laws, the Court has jurisdiction to decide the preemption issue in Count Two regardless of the outcome on Count One.  *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).

211 (1824)).  There are three forms of preemption: "(1) express preemption, (2) field preemption, and (3) conflict preemption."  *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010).  For any preemption analysis, the "ultimate touchstone" is Congress's intent.  *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks omitted).

Here, LEOSA expressly and impliedly preempts New Jersey law.  The issue is whether all QRLEOs with LEOSA identification may carry a firearm—free from prosecution—"[n]otwithstanding" New Jersey law to the contrary requiring an RPO permit with its different and more onerous qualification standards.  Without a doubt, the answer is yes.[5]

    i.    <u>LEOSA Expressly Preempts New Jersey Law Because It Applies "Notwithstanding" State Law to the Contrary.</u>

To prove express preemption, a plaintiff must show: (1) the statute contains express preemption language and (2) the challenged law is within the scope of what Congress preempted.  *See Farina*, 625 F.3d at 117-18.

    a.    *LEOSA Preempts State and Local Laws.*

The plain language of a statute is the "best evidence of Congress' preemptive intent."  *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011)

---

[5]    For a similar formulation of the issue, *see* Statement of Interest of the United States of America, ECF No. 21 at 3-4.

(internal quotation marks omitted). LEOSA's "notwithstanding" clause expressly preempts state and local law. *See* 18 U.S.C. § 926C(a) ("Notwithstanding any other provision of the law of any State or any political subdivision thereof . . . ").

The three Courts of Appeal to discuss LEOSA have acknowledged that LEOSA preempts state and local law. *See Carey v. Throwe*, 957 F.3d 468, 478 (4th Cir. 2020) ("LEOSA permits retired law enforcement officers, under certain conditions, to carry a concealed firearm notwithstanding most state or local laws."); *Burban v. City of Neptune Beach*, 920 F.3d 1274, 1277 (11th Cir. 2019) ("LEOSA permits qualified active and retired law enforcement officers who meet certain conditions to carry a concealed firearm anywhere in the United States, even if State or local law would ordinarily prohibit it."); *Duberry v. District of Columbia*, 824 F.3d 1046, 1052 (D.C. Cir. 2016) ("Congress used categorical language in the 'notwithstanding' clause of subsection (a), to preempt state and local law to grant qualified law enforcement officers the right to carry a concealed weapon.").

In other contexts, courts have readily concluded that a "notwithstanding" clause shows an intent to preempt conflicting authorities. *See Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (discussing preemptive effect of "notwithstanding" clause in a contract); *In re Federal-Mogul Global Inc.*, 684 F.3d 355 (3d Cir. 2012) (discussing preemptive effect of "notwithstanding" clause in the Bankruptcy Code).

17

LEOSA's savings clause also proves the point.  LEOSA preempts state and local law, except the narrow categories of law addressed in subsection (b), which are not relevant here.  *See* 18 U.S.C. § 926C(b) ("This section shall not be construed to supersede or limit the laws of any State that . . .").

> b.  *LEOSA's Preemption Applies to State and Local Laws Affecting Whether a QRLEO with LEOSA Identification May Carry a Firearm.*

To determine the scope of preemption, the court must look to LEOSA's language, structure, and regulatory scheme.  *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). Here, LEOSA preempts state and local laws governing those retired officers who may carry a concealed firearm.   The statutory language and structure are straightforward.  If a retired officer is "qualified" and has "identification," as defined under federal law, then they may carry a concealed firearm anywhere.  *See* 18 U.S.C. § 926C(a).[6] Nothing more is required.  *See Duberry*, 824 F.3d at 1054-55 ("[T]here is no textual indication that Congress contemplated the concealed-carry right to be other than as defined in the straightforward text.").

---

[6]     The United States agrees with this common-sense view of LEOSA.   *See* Statement of Interest of the United States of America.  ECF No. 21, p.7 ("It is the position of the United States that qualified retired law enforcement officers who possess "the identification required by subsection (d)" of 18 U.S.C. § 926C "may carry a concealed firearm," and use hollow-point bullets with that firearm, "[n]otwithstanding any other provision of the law of any State.").

LEOSA's purpose points to a similar conclusion.  It was designed to provide national uniformity for QRLEOs who wish to carry a firearm.  Prior to LEOSA, there was a "a complex patchwork" of laws related to the concealed carrying of firearms. S. Rep. No. 108-29, at *4 (2003).  Congress passed LEOSA to promote "national measures of uniformity and consistency." *Id.*  LEOSA thus established seven uniform qualification criteria, *see* 18 U.S.C. § 926C(c), and a uniform identification system, *see id.* § 926C(d), to determine whether a retired officer may carry a concealed firearm.  Nothing more is required, and any contrary state law qualification scheme is preempted.

### c.   *LEOSA Preempts New Jersey Law.*

New Jersey law conflicts with LEOSA and thus is preempted.  ***First***, contrary to LEOSA's national standard, New Jersey law redefines who is qualified to carry a concealed firearm.

1. New Jersey law requires an individual to be seventy-five or younger in order to obtain an RPO permit.  LEOSA contains no age limit. *Compare* 18 U.S.C. § 926C(c), *with* N.J.S.A. § 2C:39-6(l).

2. New Jersey law requires two firearms safety certificates per year. LEOSA only requires one per year.  *Compare* 18 U.S.C. § 926C(c)(4), *with* N.J.S.A. § 2C:39-6(l).

***Second***, contrary to the automatic right that attaches under LEOSA, New Jersey law injects bureaucracy and discretion into its qualification process.

1. Even if an individual has LEOSA identification, New Jersey law requires an individual to obtain a separate RPO permit.  *Compare* 18 U.S.C. § 926C(a), *with* N.J.S.A. § 2C:39-6(l).

19

2. In order to obtain an RPO permit, an individual must pay an application fee.  There is no fee to exercise the right under LEOSA.  *Compare* 18 U.S.C. § 926C(a), *with* N.J.S.A. § 2C:39-6(l).

3. In order to obtain an RPO permit, an individual must provide the State information which, in the State's complete discretion, could lead to the denial of an RPO permit, but which would not be disqualifying under LEOSA.  *See, e.g.*, SOMF at ¶¶ 52-53; Harbist Decl., Exhibits M and N (RPO denials for Jakubiec and Martinez).

4. The New Jersey RPO permit process allows the Superintendent of State Police to deny an application in his sole discretion.  *See, e.g.*, N.J.S.A. § 2C:58-3(c)(5) ("No handgun permit . . . shall be issued . . . [t]o any person where the issuance would not be in the interest of the public health, safety or welfare."), *incorporated by reference in* N.J.S.A. § 2C:39-6(l).  The right to carry under LEOSA is automatic upon being "qualified" and possessing proper identification.  18 U.S.C. § 926C(a).  There is no discretion for a state actor to deny a QRLEO's right to carry under LEOSA.

5. A New Jersey RPO permit only allows an officer to carry a specific firearm that is registered with the State, whereas LEOSA allows an officer to carry a firearm of "the same type" as the one they met the firearms safety standards on.  *Compare* Harbist Decl., Exhibit L at ¶ 15 (explaining that a QRLEO with an RPO permit "must qualify with each firearm"), *with* 18 U.S.C. § 926C(d) (providing LEOSA safety certification must relate to a firearm "of the same type as the concealed firearm").

***Finally***, contrary to LEOSA, New Jersey law prohibits QRLEOs with proper identification from carrying hollow point ammunition.  *Compare* 18 U.S.C. § 926C(e)(1)(B), *with* N.J.S.A. § 2C:39-3(f).

While New Jersey now attempts to placate the federal plaintiffs with its 2021 Policy, that Policy only underscores the conflict.  On one hand, it acknowledges that LEOSA applies to all federal and state retired law enforcement officers.  SOMF at ¶

46.  Then, in contradictory fashion, it states that New Jersey residents who retired from a New Jersey law enforcement agency must still meet New Jersey's more onerous RPO permit requirements in order to carry a firearm.  *Id.* at ¶ 47.  And, even as to federal and out-of-state retirees, the 2021 Policy is subject to change at any time.  Fundamentally, the 2021 Policy does not alter the underlying text of N.J.S.A. § 2C:39-5 and -6, which are preempted by LEOSA.

Accordingly, Plaintiffs are entitled to a judgment declaring invalid and enjoining the enforcement of N.J.S.A. § 2C:39-5, N.J.S.A. § 2C:39-6(l), and N.J.S.A. § 2C:39-3(f) as to all QRLEOs with LEOSA identification.  *See* Statement of Interest of the United States of America, ECF No. 21 at 7.

ii.    LEOSA Impliedly Preempts New Jersey Law Because Imposing More Onerous Requirements on the Exercise of a Federal Right Interferes with Congress's Purposes and Objectives.

Alternatively, LEOSA also preempts New Jersey law under a conflict preemption analysis.  Conflict preemption occurs when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

As explained above, New Jersey law conflicts with LEOSA because it imposes an age limit, requires additional firearms safety certificates, requires an application, an application fee, and gives State bureaucrats discretion to deny an RPO permit for any reason.  But, Congress passed LEOSA to eliminate parochial

21

firearms laws and create national uniformity.  *See* S. Rep. No. 108-29, at *4; H.R. Rep. No. 108-560, at *3; Argument, Section B(i)(b), *supra*.

In short, LEOSA also impliedly preempts New Jersey law.  Under LEOSA, any QRLEO with proper identification may carry a concealed firearm, regardless of residence or the agency from which he or she retired.  *See* 18 U.S.C. § 926C(a).  New Jersey law requires all New Jersey resident QRLEOs to meet its more onerous qualifications and do more than LEOSA requires to exercise a concealed carry right.

A state cannot alter federal law to suit its own parochial needs.  *See, e.g.*, *Felder v. Casey*, 487 U.S. 131, 153 (1988) (finding federal preemption of state law requiring notice of claim before filing Section 1983 action); *Lewis v. Alexander*, 685 F.3d 325, 344 (3d Cir. 2012) (finding federal preemption of state law that attempted to add requirements to the definition of a special needs trust under federal law).  By imposing obligations beyond what LEOSA requires, New Jersey law interferes with Congress's objectives, embodied in LEOSA, to create a uniform system for QRLEOs to carry firearms.  *See, e.g.*, Harbist Decl., Exhibit L (2021 Policy interpreting LEOSA to apply based on "residence" and former law enforcement agency—two arbitrary lines that LEOSA sought to avoid).  It is thus preempted.

### iii.   The State Cannot Justify Its Disregard for Federal Law.

The State's anticipated constitutional arguments fail to justify its years-long disregard of federal law.  The Court must "begin with the time-honored presumption

that [LEOSA] is a constitutional exercise of legislative power." *Reno v. Condon*,

528 U.S. 141, 148 (2000).

> a.  *LEOSA Constitutionally Regulates Intrastate Possession of a Firearm That Traveled in Interstate Commerce.*

The State has argued that LEOSA's preemption only applies to QRLEOs

traveling interstate, not intrastate.  *See* ECF No. 10 at 27.

This argument misreads the statute.  ***First***, LEOSA describes the ***type*** of

firearm a QRLEO may carry (*i.e.*, one that traveled in interstate commerce), not the

***location*** in which a QRLEO may carry them.  18 U.S.C. § 926C(a) (stating a QRLEO

"may carry a concealed firearm ***that has been shipped or transported in interstate***

***or foreign commerce***" (emphasis added)).  This is the natural reading of the statute,

as the interstate commerce language modifies "firearm," not "may carry."[7]

***Second***, LEOSA preempts the laws of "any political subdivision" of a state.

18 U.S.C. § 926C(a).  This includes, for example, counties and municipalities within

a state.  The statute plainly contemplates intrastate travel.

***Third***, if LEOSA only provided an interstate travel right, then another

statute—18 U.S.C. § 926A—would be superfluous.  *See* 18 U.S.C. § 926A (under

---

[7]     To have it any other way, as the State has claimed, LEOSA would have to read: a QRLEO "may carry ***in interstate or foreign commerce*** a concealed firearm." That is not what the law says.  The State cannot rewrite a federal statute to suit its local needs.

certain conditions, eligible persons "shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry . . . ."). That is not what Congress intended.

*Fourth*, New Jersey's policy of allowing some, but not all, retired officers to carry firearms in New Jersey yields absurd results. Under the 2021 Policy, for example, a seventy-five-year-old QRLEO residing in Pennsylvania, and retired from a New Jersey law enforcement agency could carry a firearm in New Jersey; but a seventy-five-year-old QRLEO from the same agency residing in New Jersey could not. Or, a Pennsylvania resident QRLEO could spend summers at the New Jersey shore and carry a concealed firearm there, but a New Jersey retiree residing full-time at the New Jersey shore could not. Or, a retired New Jersey QRLEO wintering in Florida and residing in New Jersey during the summer arguably must obtain an RPO permit. The State also suggests that an in-state QRLEO cannot carry from their home to the border of a neighboring state but can carry once they cross the border. ECF No. 10 at 27; see Harbist Decl., Exhibit L, ¶ 20(B)(iii). These bizarre outcomes turn LEOSA on its head, as New Jersey-resident (or even part-time resident) officers would be unable to protect themselves and their communities.

LEOSA unambiguously permits intrastate possession of a concealed firearm, and it is within Congress's Commerce power to do so. Congress can regulate items

that have passed through interstate commerce, as well as intrastate activities that "substantially affect" interstate commerce. *United States v. Morrison*, 529 U.S. 598, 609 (2000) (internal citations and quotation marks omitted). Gun legislation is a common exercise of this power. *See e.g.*, 18 U.S.C. § 922(g)(1) (making it a federal crime for a felon to possess a firearm "***which has been shipped or transported in interstate or foreign commerce***" (emphasis added)); *Scarborough v. United States*, 431 U.S. 563, 568 (1977); *see also United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001) ("[P]roof . . . that the gun had traveled in interstate commerce, at some time in the past, was sufficient to satisfy the interstate commerce element. . . ."). LEOSA follows this tradition. Under the Commerce Clause, Congress can thus regulate whether QRLEOs may carry firearms that at some point traveled in interstate commerce, even if the possession is entirely intrastate. LEOSA is a constitutional exercise of Congress's commerce power.

        b.    *LEOSA Does Not Violate the Anticommandeering Doctrine.*

The State has also argued that LEOSA violates the anticommandeering doctrine, which prohibits the federal government from telling state legislatures what to do. *See Printz v. United States*, 521 U.S. 898 (1997); *New York v. United States*, 505 U.S. 144 (1992). This argument rests on the erroneous premise that Plaintiffs seek to compel the State to issue LEOSA identifications. *See* ECF No. 10 at 30; Harbist Decl., Exhibit L at ¶ 7 ("LEOSA, did not and could not constitutionally

require a state to issue documents in furtherance of this federal firearms program."). But, Plaintiffs merely seek to compel Defendants to comply with LEOSA—*i.e.*, if a retired officer is "qualified" and has identification[8] under LEOSA, the State cannot prosecute them for exercising their right to carry under federal law. This includes possession of hollow point bullets. That is what federal law requires.

Demanding state compliance with federal law is not unconstitutional commandeering. *See Del. Cnty., Pa. v. Fed. Hous. Fin. Auth'y*, 747 F.3d 215, 228 (3d Cir. 2014) ("A state official's compliance with federal law and non-enforcement of a preempted state law—as required by the Supremacy Clause—is not an unconstitutional commandeering."). In *Reno v. Condon*, a federal law restricting states from disclosing a driver's personal information without consent preempted, without commandeering, a state law allowing the DMV to disclose a driver's information upon request. 528 U.S. 141, 144 (2000). Here, if an officer satisfies LEOSA, LEOSA preempts, without commandeering, any contrary state law imposing more onerous standards than LEOSA. That is the point of the Supremacy Clause. *See Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018) (explaining that a

---

[8]   This case does not present the question of whether a state can decline to issue LEOSA identifications altogether. *See Carey*, 957 F.3d at 481. As some courts have explained, LEOSA reserves "a reservoir of powers" for the states under subsection (d)—such as how to issue LEOSA identification and firearm safety standards. *See, e.g., Moore v. Trent*, No. 09-C-1712, 2010 WL 5232727, at *4 (N.D. Ill. Dec. 16, 2010). That is not the issue here. Plaintiffs and their members are "qualified" and have identifications under LEOSA.

preempting statute "confers on private entities . . . a federal right . . . subject only to certain (federal) constraints"); *cf. Felder*, 487 U.S. at 153 (holding that Wisconsin statute requiring 120-day notice period before filing a Section 1983 claim (a federal right) was preempted because it imposed obstacles to the exercise of a federal right that federal law did not itself impose).   Accordingly, Plaintiffs are entitled to a judgment as a matter of law on Count II.

### C.   Plaintiffs Are Entitled to Judgment Under 42 U.S.C. § 1983.

The Court should also grant summary judgment on Count I of the Complaint, which alleges a violation of 42 U.S.C. § 1983.  "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'"  *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983).  A Section 1983 plaintiff must show: (1) that a person acting under color of state law, (2) deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).  Both elements are easily met.

*First*, the state action requirement is met because N.J.S.A. § 2C:39-5 and -6(l) are state statutes that Defendants Grewal and Callahan are responsible for enforcing in their official capacities as Attorney General and Superintendent of State Police. *See* SOMF at ¶ 38.

***Second***, Defendants have deprived Plaintiffs of their federal right to carry a concealed firearm under LEOSA.  The threshold issue is whether LEOSA is a "right" enforceable under Section 1983.  To make that determination, the Court must analyze three factors, in what is known as a "*Blessing* analysis":

> First, Congress must have intended that the provision in question benefit the plaintiff. . . Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. . . Third, the statute must unambiguously impose a binding obligation on the States.

*Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).  In *DuBerry v. District of Columbia*, the D.C. Circuit held that the right to carry a concealed firearm under LEOSA met the *Blessing* test.  824 F.3d 1046, 1052-1054 (D.C. Cir. 2016).

The same result must apply here.  LEOSA is intended to create an individual right.  It uses "rights-creating language" and "individually focused terminology." *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 287 (2002).  The statute speaks in terms of a "qualified retired law enforcement officer" with "identification," who "may carry a concealed firearm."  18 U.S.C. § 926C(a).  The first *Blessing* element is met.  *See DuBerry*, 824 F.3d at 1052 (explaining the plain text of LEOSA grants a right to carry a concealed firearm notwithstanding state or local law).[9]

---

[9]     Even the district court cases Defendants cited in their Motion to Dismiss, which held there is no right to compel a state to issue LEOSA identification, nonetheless recognized that LEOSA creates a right to carry a firearm. *See, e.g.*, *Cole*

Courts can competently enforce LEOSA because the right is "specific and enumerated." *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 189 (3d Cir. 2004). An individual may carry a concealed firearm if he or she is "qualified" and has "identification." These standards are "historical and objective." *DuBerry*, 824 F.3d at 1053. They can be determined from "the officer's personnel records and the statutes in effect before the officer retired." *Id.* at 1053. The second *Blessing* element is thus also met.

LEOSA is binding on the States because it is mandatory that States obey federal law. *See id.* (explaining binding nature of LEOSA is "evident from the categorical preemption of state and local law standing in the way of the LEOSA right to carry"). LEOSA expresses a federal command, not a preference, which the State cannot ignore.

LEOSA is a federal right enforceable under Section 1983 and the State has deprived Plaintiffs of LEOSA's benefit. LEOSA creates a right for any qualified retired officer with proper identification to carry a concealed firearm. 18 U.S.C. § 926C(a); *see Carey*, 957 F.3d at 478; *Burban*, 920 F.3d at 1277; *Duberry*, 824 F.3d

---

*v. Monroe Cnty.*, 359 F. Supp. 3d 526, 535 (E.D. Mich. 2019); *D'Aureli v. Harvey*, No. 1:17-cv-00363, 2018 WL 704733, at *4 (N.D.N.Y. Feb. 2, 2018); *Henrichs v. Ill. Law Enforcement Training & Standards Bd.*, 306 F. Supp. 3d 1049, 1055 (N.D. Ill. 2018); *Mpras v. District of Columbia*, 74 F. Supp. 3d 265, 270 (D.D.C. 2014); *Johnson v. N.Y. State Dept. of Corr. Servs.*, 709 F. Supp. 2d 178, 185 (N.D.N.Y. 2010).

at 1052.  Under New Jersey law, a QRLEO with LEOSA identification cannot carry a firearm—and they will be prosecuted if they try to do so.  Instead, New Jersey forces QRLEOs "residing" in the State to undergo a separate administrative process to obtain its own RPO permit.  As part of that process, a QRLEO must satisfy different, and more onerous, standards than LEOSA.  *See* Argument, Section B(i)(c), *supra* (explaining New Jersey's age limit, biannual firearms certification, RPO permit process, permit fee, and discretion to deny an RPO permit).

New Jersey law thus deprives Plaintiffs of their rights under LEOSA.  FLEOA and NJFOP have members that are "qualified" and have LEOSA identification. SOMF ¶¶ 35, 37.  Bowen, Jakubiec, and Martinez are also "qualified" and have LEOSA identification.  *Id.* at ¶¶ 1-33.  Under federal law, they may all carry a firearm.  18 U.S.C. § 926C(a).

Yet, Plaintiffs (or their members residing in New Jersey) face prosecution under New Jersey law, unless they obtain an RPO permit.  To avoid this, Bowen obtained an RPO permit; but he will no longer be eligible when he turns seventy-five years old.  *Id.* at ¶¶ 50-51.  Jakubiec tried to obtain an RPO permit, but the State denied his application for reasons unrelated to LEOSA.  *Id.* at ¶ 52.  Martinez was never issued an RPO permit, again for reasons unrelated to LEOSA.  *Id.* at ¶ 53.  All three individual plaintiffs show the quintessential deprivation of a federal right: federal law says they may carry a firearm; New Jersey law says federal law does not

matter and will prosecute Plaintiffs unless they obey State law.   Accordingly, Plaintiffs are entitled to judgment under 42 U.S.C. § 1983.

The State's anticipated argument changes nothing.  *See* ECF No. 10 at 16-17. Defendants have argued that LEOSA does not create a right that can be enforced under Section 1983 because LEOSA does not obligate States to issue photographic identification.   In its most recent policy statement, the State reinforced that view. Harbist Decl., Exhibit L, at ¶ 7.   Here, Plaintiffs do not seek to compel New Jersey to issue photographic identifications.   They seek to compel New Jersey to comply with the right of all qualified retired law enforcement officers—regardless of their residence or former employer—to carry a concealed firearm under LEOSA.

Nearly every case the State might cite to support this argument has involved an asserted right to compel identification. *See, e.g.*, *Carey*, 957 F.3d at 474; *Burban*, 920 F.3d at 1276; *Cole v. Monroe Cnty.*, 359 F. Supp. 3d 526, 533 (E.D. Mich. 2019);  *D'Aureli v. Harvey*, No. 1:17-cv-00363, 2018 WL 704733, at **5-6 (N.D.N.Y. Feb. 2, 2018); *Henrichs v. Ill. Law Enforcement Training & Standards Bd.*, 306 F. Supp. 3d 1049, 1055 (N.D. Ill. 2018); *Mpras v. District of Columbia*, 74 F. Supp. 3d 265, 270 (D.D.C. 2014); *Johnson v. N.Y. State Dept. of Corr. Servs.*, 709 F. Supp. 2d 178, 185 (N.D.N.Y. 2010).   But those cases are inapposite because identification is not at issue.   Plaintiffs are "qualified" and already have identification from their former federal, state, or local agencies.  SOMF at ¶¶ 1-33.

31

If Plaintiffs wish to carry a firearm under LEOSA, they may do so—nothing more is required. *See* 18 U.S.C. § 926C(a); *see Carey*, 957 F.3d at 478; *Burban*, 920 F.3d at 1277; *Duberry*, 824 F.3d at 1052.

## **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request summary judgment on Counts I and II of the Complaint, as set forth in the accompanying Order, declaring that New Jersey laws are preempted by Federal law and unenforceable.

Dated: May 14, 2021                    */s/ Nicholas C. Harbist*

**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky
Nicholas C. Harbist
New Jersey Resident Partners
Michael R. Darbee
Blair A. Gerold
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-2646
Facsimile: (609) 897-7286
Orlofsky@BlankRome.com
Harbist@BlankRome.com
MDarbee@BlankRome.com
BGerold@BlankRome.com
*Attorneys for Plaintiffs*