**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION,** *et al.,*

Plaintiffs,

v.

**GURBIR GREWAL, in his official capacity as Attorney General of the State of New Jersey,** *et al.,*

Defendants.

Civil Action No. 20-05762 (ZNQ) (TJB)

**OPINION**

**QURAISHI, District Judge**

### INTRODUCTION

This matter comes before the Court upon the Motion for Summary Judgment filed by Plaintiffs Federal Law Enforcement Officers Association ("FLEOA"), New Jersey Fraternal Order of Police ("NJFOP"), Richard Bowen, Joseph Jakubiec, and Christopher Martinez (collectively, "Plaintiffs"). (ECF No. 34.) Defendants Gurbir Grewal and Andrew Bruck, in their official capacities as Attorney General of the State of New Jersey, and Patrick Callahan, acting in his official capacity as the Superintendent of the New Jersey State Police (collectively, the "State"), opposed Plaintiffs' Motion for Summary Judgment and filed a Cross-Motion for Summary Judgment. (ECF Nos. 41, 54.) Plaintiffs opposed the State's Cross-Motion for Summary Judgment and filed a Sur-Reply. (ECF Nos. 44, 57.) The Court decides the Motion based on the written submissions of the parties and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated herein, the Court **GRANTS**

Plaintiffs' Motion for Summary Judgment and **DENIES** the State's Cross-Motion for Summary Judgment.

## BACKGROUND

This is a challenge to New Jersey laws that restrict retired law enforcement officers from carrying firearms and using hollow point ammunition in New Jersey. Plaintiffs sue under 42 U.S.C. § 1983 ("Section 1983"), arguing that that the federal Law Enforcement Officer Safety Officer Act ("LEOSA") creates a private right to carry and that LEOSA preempts the New Jersey laws pursuant to the Supremacy Clause. (Compl. ¶¶ 65–89, ECF No. 1.) Plaintiffs seek declaratory and injunctive relief as-applied to individuals who meet the requirements under LEOSA, 18 U.S.C. § 926C. (*Id.* ¶¶ 73, 89.)

I.   **The Law Enforcement Officer Safety Act**

In 2004, Congress passed, and the President signed into law, the Law Enforcement Officer Safety Act ("LEOSA"). 150 Cong. Rec. H5403-06, H5403, 2004 WL 1536602 (July 9, 2004); 150 Cong. Rec. H7241-01, H7242, 2004 WL 2075979 (Sept. 17, 2004). LEOSA provides the following:

> *Notwithstanding any other provision of the law of any State or any political subdivision thereof,* an individual who is a qualified retired law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b).[1]

---

[1] Subsection (b) states that LEOSA shall not supersede or limit any state laws (1) permitting private persons or entities to prohibit or restrict the possession of concealed firearms on their property; or (2) prohibiting or restricting the possession on any state or local government property. 18 U.S.C. § 926C(b). These exceptions to subsection (a) are inapplicable to this matter.

2

18 U.S.C. § 926C(a) (emphasis added).  Subsection (c) outlines the requirements of a "qualified retired law enforcement officer" ("QRLEO") and subsection (d) outlines the requirements for "identification." *See id.* § 926C(c), (d).

To be a QRLEO under subsection (c), the retired law enforcement officer must meet seven requirements.  *Id.* § 926C(c).  He or she must have "separated from service in good standing from service with a public agency as a law enforcement officer" and "before such separation, [must have been] authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest or apprehension under [relevant law]." *Id.* § 926C(c)(1)–(2). Additionally, before separating from the agency, the retired law enforcement officer must have "served as a law enforcement officer for an aggregate of 10 years or more" or "separated from service with [the] agency, after completing any applicable probationary period of such service, due to a service-connected disability, as determined by [the] agency." *Id.* § 926C(c)(3).  The retired law enforcement officer must also meet the following: "the [relevant] standards for qualification in firearms training" during the most recent 12-month period; "[must not have] been . . . found unqualified for reasons related to mental health"; must not be "under the influence of alcohol or another intoxicating substance"; and must not be "prohibited by federal law from receiving a firearm." *Id.* § 926C(c)(4)–(7); *see also Duberry v. D.C.*, 924 F.3d 570, 575 (D.C. Cir. 2019).

The QRLEO must also possess the "identification required by subsection (d)." 18 U.S.C. § 926C(a).  He or she may do so by:  (1) providing a "photographic identification issued by the agency . . . that identifies the person as having been employed as a police officer or law enforcement officer" and indicating that he "meet[s] the active duty standards for qualification in firearms training as established by the agency"; or (2) providing the "photographic identification

issued by the agency . . . that identifies [him or her] as having been employed as a police officer or law enforcement officer" and a separate "certification issued by the State in which the individual resides or by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State" that certifies the QRLEO has met "active duty standards . . . as established by the State . . . or, [alternatively] if the State has not established such standards, standards set by any law enforcement agency within that State . . . ." *Id.* § 926C(d)(1)–(2); *Duberry*, 924 F.3d at 575.

A "firearm" includes "ammunition not expressly prohibited by Federal law or subject to the provisions of the National Firearms Act," and does not include: (i) "any machinegun" as defined under 26 U.S.C. § 5845(b); (ii) "any firearm silencer" as defined under 18 U.S.C. § 921(a)(24); and (iii) "any destructive device" as defined under 18 U.S.C. § 921(a)(4).  18 U.S.C. § 926C(e).

Accordingly, if a retired law enforcement officer (1) is qualified under subsection (c) and (2) "carries the requisite identification" under subsection (d), he may, under subsection (a), "carry a concealed firearm [as defined above] that has been shipped in interstate or foreign commerce." *Duberry*, 924 F.3d at 574; *see also* 18 U.S.C. § 926C(a).

## II.    New Jersey Laws

New Jersey law makes it a crime to carry a handgun without a permit or an exemption. N.J.S.A. 2C:39-5(b).  However, the law exempts retired law enforcement officers, including QRLEOs under LEOSA, from this restriction if they obtain a retired officer permit from the New Jersey ("Permit").  *See* N.J.S.A. 2C:39-6(*l*).  (2018 Guidelines ¶ 1, Defs.' Ex. E, ECF No. 41-5.) N.J.S.A. 2C:39-6(*l*) outlines the requirements for a QRLEO to obtain a Permit (the "Permit Scheme").  (*See* 2018 Guidelines ¶ 1, Defs.' Ex. E, ECF No. 41-5.)

4

To obtain a Permit, the retired officer must make an "application in writing to the Superintendent of State Police for approval to carry a handgun for one year" and reapply annually for renewal.   N.J.S.A  2C:39-6(*l*)(1).   Permit applications are reviewed by the Firearms Investigation Unit ("FIU") of the  New Jersey State Police ("NJSP").  (*See* Bogdan Decl. ¶¶ 4–5, ECF No. 41-6.)  The retired officer must be "75 years of age or younger," "semi-annually qualif[y] in the use of the handgun he [or she] is permitted to carry," and "pay[] the actual costs associated with those semi-annual qualifications."   N.J.S.A. 2C:39-6(*l*).   The applicant must submit "documentation confirming [that he or she has] met the active duty firearms qualifications standards for law enforcement officers in the State of New Jersey for the firearm(s) [that he or she] want[s] to carry."  (Bogdan Decl. ¶ 10.)  This documentation "must list the name of the instructor" of the firearms certification because the FIU needs to "verify that the instructor is certified with the State of New Jersey to issue such documentation."  (*Id.* ¶ 13.)

Upon receipt of the application, the superintendent "request[s] a verification of service from the chief law enforcement officer of the organization in which the retired officer was last regularly employed as a full-time law enforcement officer prior to retiring," including the contact information and dates of service of the applicant, a list of handguns known to be registered to the applicant, a statement that the applicant is not subject to any relevant statutory restrictions, and a statement that the applicant retired in good standing. N.J.S.A. 2C:39-6(*l*)(2).  There are specific forms (forms SP-232 and SP-66) that applicants need to submit in order to meet this requirement. (*See* Bogdan Decl. ¶¶ 5–6, 8.)  The FIU conducts a criminal background check on the applicant to ensure he or she is not subject to a statutory disqualifier from possessing a firearm.  (*Id.* ¶ 7.)

If the superintendent approves the application, the superintendent then notifies the chief law enforcement officer where the applicant resides.   N.J.S.A. 2C:39-6(*l*)(3).   Thereafter, the

5

superintendent issues the retired officer an "identification card permitting the retired officer to carry a handgun pursuant to this subsection," which "shall be valid for one year from the date of issuance and shall be valid throughout the state." N.J.S.A. 2C:39-6(*l*)(3)–(4). The QRLEO "shall produce the identification card for review on the demand of any law enforcement officer or authority." N.J.S.A. 2C:39-6(*l*)(4).

Permits are valid for one year. (Bogdan Decl. ¶ 14.) To renew a Permit, the QRLEO must submit to the FIU updated forms (*i.e.*, SP-232a and SP-66) and a "certification confirming that [he or she] continue[s] to meet the certification standards required by the State of New Jersey for the firearm(s) [he or she is] permitted to carry." (*Id.* ¶¶ 15, 18.) For renewal applications, the FIU separately confirms with the NJSP that the instructor is certified to issue such firearm certifications. (*Id.* ¶ 19.)

In addition, New Jersey makes it a crime to possess "hollow nose" ammunition unless the person is an active law enforcement officer (the "hollow nose ammunition prohibition"). N.J.S.A. 2C:39-3(f). This is not subject to any exemption even if the person carrying has a Permit.

Finally, New Jersey law provides that "[n]o handgun purchase permit or firearms purchaser identification card shall be issued ... [t]o any person where the issuance would not be in the interest of the public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5). This allows the superintendent to deny the application he believes is not "in the interest of public health, safety or welfare." *Id.*

### III.    The New Jersey Policy Guidance

The Attorney General of New Jersey has the authority to enforce New Jersey law, including the firearms laws at issue, N.J.S.A. 2C:39-3 (prohibiting hollow point ammunition), N.J.S.A. 2C:39-5(b) (making it unlawful to possess firearms subject to exemptions), and N.J.S.A. 2C:39-

6(*l*) (exempting retired law enforcement officers with Permits).  (Defs.' Statement of Undisputed Material Facts ("SUMF") ¶ 10, ECF No. 41-2.)

On October 12, 2018, the New Jersey Attorney General issued guidelines called "Frequently Asked Questions Concerning Retired Law Enforcement Officer Permits to Carry Firearms and the Federal Law Enforcement Officers Safety Act of 2004 (LEOSA)" (the "2018 Guidelines").  (2018 Guidelines, ECF No. 41-5.)  According to the 2018 Guidelines, the Permit Scheme's "reference to LEOSA was made to 'permit retired law enforcement officers from other states . . . who are domiciled in New Jersey to carry a firearm, provided they meet the same training and qualification standards that New Jersey retirees must meet under the law.'"  (*Id.* ¶ 2 (quoting *In re Cassaleggio*, 420 N.J. Super. 121, 128 (App. Div. 2011).)  Therefore, according to the 2018 Guidelines, LEOSA "does not provide an alternate path to eligibility to carry a firearm where [a retired law enforcement officer] living in New Jersey is not eligible for [a Permit] under State law."  (*Id.* (citing *Cassaleggio*, 420 N.J. Super. at 128–29).)  The 2018 Guidelines also states that a "New Jersey [retired law enforcement officer] cannot carry hollow point bullets" and that "LEOSA does not provide any additional authority for [a retired law enforcement officer] residing in New Jersey to carry hollow point bullets because it is impermissible under State law."  (*Id.* ¶ 3.)

On April 22, 2021, the Attorney General issued updated policy guidelines (the "2021 Guidelines").  The 2021 Guidelines define a QRLEO as "[a]n individual who satisfies all of the requirements of the Law Enforcement Officers Safety Act of 2004 ("LEOSA") . . . . "  (2021 Guidelines ¶ 1, Defs.' Ex. E, ECF No. 41-5.)  The 2021 Guidelines also distinguishes between three categories of retirees:  (1) federal/out-of-state retirees residing in New Jersey; (2) New Jersey retirees residing out of state; and (3) New Jersey retirees residing in New Jersey.  (*See id.* ¶ 7, 8, 11.)  According to the 2021 Guidelines, federal/out-of-state retirees residing in New Jersey and

New Jersey retirees residing out-of-state do not need to apply for a Permit to carry a firearm in New Jersey so long as they meet the requirements of LEOSA (*i.e.*, they are a QRLEO and possess the required identification under LEOSA). (*See id.* ¶¶ 8, 11.) As for New Jersey retirees residing in New Jersey who wish to carry a firearm in New Jersey, they "must meet the state statutory standards and obtain [a Permit] in accordance with N.J.S.A. 2C:39-6(*l*)." (*Id.* ¶ 7.) LEOSA does not "provide an alternate path" for New Jersey retirees residing in New Jersey to carry a firearm in New Jersey. (*Id.*)

With respect to hollow point ammunition, New Jersey retirees residing in New Jersey "cannot carry hollow point bullets in New Jersey." (*Id.* ¶ 12.) They "can generally use any type of commercially available ammunition, so long as it is not hollow point." (*Id.* ¶ 13.) Other retirees (*i.e.*, federal/out-of-state retirees residing in New Jersey and New Jersey retirees residing out-of-state who meet the applicable requirements under LEOSA), "may carry any 'firearm' as defined by LEOSA." (*Id.* ¶ 12.)

## IV.    Procedural History

On May 11, 2020, Plaintiffs filed the Complaint in this matter. (ECF No. 1.) On July 27, 2020, the State filed a Motion to Dismiss. (ECF No. 10.) On September 4, 2020, the Association of New Jersey Rifle & Pistol Clubs, Inc., and the National Rifle Association filed amici briefs opposing the Motion to Dismiss, which Plaintiffs opposed on September 15, 2020. (ECF Nos. 15, 18.) On October 8, 2020, the United States Department of Justice, Civil Division, filed a Statement of Interest in support of Plaintiffs' position. (ECF No. 21.) On October 13, 2020, the State withdrew its Motion to Dismiss (ECF No. 22), and on October 27, 2020, the State file its Answer to the Complaint (ECF No. 24).

8

From approximately December 1, 2020, through approximately April 15, 2021, the parties engaged in discovery. (*See* ECF Nos. 26–33.) On April 22, 2021, the State amended its policy guidelines as they relate to federal/out-of-state retirees residing in New Jersey. (*See* 2021 Guidelines.)

On May 14, 2021, Plaintiffs filed the Motion for Summary Judgment, which included exhibits and affidavits of the individual and associational plaintiffs. (ECF Nos. 34, 35.) On June 28, 2021, the State filed a consolidated Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. (ECF No. 41.) On July 26, 2021, Plaintiffs filed a consolidated Opposition to the State's Cross-Motion for Summary Judgment and their Reply. (ECF No. 44.) Plaintiffs also filed supplemental declarations with respect to associational plaintiff NJFOP. (ECF Nos. 45, 46.) On August 17, 2021, the State filed a Reply (ECF No. 54), and on August 23, 2021, Plaintiffs filed a Sur-Reply (ECF No. 57). Plaintiff's Motion for Summary Judgment and the State's Cross-Motion for Summary Judgment are presently before the Court.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

A party must support the assertion that a fact is or is not "genuinely disputed" by (A) citing to materials in the record, such as "depositions, documents . . . , affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or (B) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56.

While a "movant [defendant] has the burden of showing that there is no genuine issue of fact, . . . the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson*, 477 U.S. at 256. Rather, the plaintiff "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 257. This is true "even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Id.* Thus, a party "opposing a properly supported motion for summary judgment 'may not rest upon mere allegations or denials of his pleadings,'" but rather, set forth specific facts that there is a genuine issue for trial. *Id.* at 248 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

## DISCUSSION

Plaintiffs move for summary judgment on both counts alleged in the Complaint: (1) LEOSA preempts the Permit Scheme and prohibition on hollow point ammunition as applied to Plaintiffs and all QRLEOs with identification (Count II), (Pls.' Mot. for Summ. J. at 16, 29–30);

and (2) the State's enforcement of its Permit Scheme has deprived Plaintiffs of "rights, privileges, or immunities secured by the Constitution or laws of the United States" in violation of 42 U.S.C. § 1983 (Count I), (*id.* at 27).

The State moves for summary judgment on three grounds: (1) Plaintiffs' claims are not justiciable, (Defs.' Mot. for Summ. J. at 11–18, ECF No. 41-1.); (2) LEOSA does not confer a private right of action under § 1983 (*id.* at 18–27); and (3) LEOSA does not preempt the New Jersey laws, (*id.* at 27–40). The Court will first explain who Plaintiffs are and then address these arguments.

## V.     The Plaintiffs

Plaintiffs are individuals and associations alleging injury because they or their members may carry a firearm under LEOSA but risk prosecution for doing so under N.J.S.A. 2C:39-5(b) because they do not have a Permit. Plaintiffs or their members have been denied or disqualified from receiving a Permit or are deterred from applying for a Permit because of the requirements under the Permit Scheme. (*See* Pls.' Mot. for Summ. J. at 10–13, ECF No. 34-1; Pls.' Statement of Undisputed Material Facts ("SUMF") ¶¶ 50–53, ECF No. 34-7; Fox Suppl. Decl., ECF No. 45; Lytwyn Decl., ECF No. 46.) Plaintiffs submitted affidavits of each individual plaintiff. (*See* Martinez Decl., ECF No. 34-2; Jakubiec Decl., ECF No. 34-3; Bowen Decl., ECF No. 34-5.) Plaintiffs also submitted affidavits from presidents and/or members of both associations, FLEOA and NJFOP. (Cosme Decl., ECF No. 34-4; Fox Decl., ECF No. 34-6; Fox Suppl. Decl.; Lytwyn Decl.) The parties additionally underwent discovery as to the individual plaintiffs. (*See generally* Harbist Decl., ECF No. 35; Bradt Decl., ECF No. 41-4.)

Based on the affidavits and discovery, the individual plaintiffs are federal retirees living in New Jersey whose interests are also represented by FLEOA. None of the plaintiffs are New Jersey

retirees who reside in New Jersey, but NJFOP is an associational plaintiff who represents the interests of New Jersey retirees residing in New Jersey. (*See* Pls.' Opp'n at 10–12, ECF No. 44.)

A.   *The Federal Retiree Plaintiffs*

The three federal/out-of-state retirees residing in New Jersey are Richard Bowen ("Bowen"), Joseph Jakubiec ("Jakubiec"), and Christopher Martinez ("Martinez") (the "Federal Retiree Plaintiffs"). (*See* Pls.' SUMF ¶¶ 1, 10, 19.) Plaintiffs submit that Bowen, Jakubiec, and Martinez are (1) QRLEO under LEOSA and (2) carry the requisite identification, (*see* Pls.' SUMF ¶¶ 1–33), yet they have not been able to carry a firearm under New Jersey law, (*id.* ¶¶ 50, 51, 52, 53). Plaintiffs also assert that FLEOA has associational standing through the injuries of its members. (Pls.' Mot. for Summ. J. at 13, ECF No. 34-1.)

1.   QRLEO Requirements

The parties agree that the federal retiree plaintiffs reside in New Jersey and retired from federal law enforcement agencies after having served as law enforcement officers for an aggregate of ten years or more. (Pls.' SUMF ¶¶ 1, 2, 4, 10, 11, 13, 19, 20, 22; Defs.' Response to Pls.' SUMF ¶¶ 1, 2, 4, 10, 11, 13, 19, 20, 22.) Prior to their retirements, each of the federal retiree plaintiffs were "authorized by law to engage in the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest or apprehension under [the applicable law]." (Pls.' SUMF ¶¶ 3, 12, 21; Defs.' Response to Pls.' SUMF ¶¶ 3, 12, 21.)[2]

_____

[2] Bowen was employed by the United States Secret Service (1975–2003); Jakubiec was employed by the United States Postal Service (1980–2008); and Martinez was employed by the Department of Homeland Security (2003–2014) and the former United States Customs Service (1987–2003). (Pls.' SUMF ¶¶ 1, 10, 19; Defs.' Response to Pls.' SUMF ¶¶ 1, 10, 19.)

These plaintiffs have not been "officially found by a medical professional employed by [their respective agencies] to be unqualified for reasons relating to mental health," have not entered into an agreement with [his respective agency] in which he acknowledged that he is not qualified under LEOSA for reasons relating to mental health," and are not prohibited by federal law from receiving a firearm. (Pls.' SUMF ¶¶ 6, 7, 8, 15, 16, 17, 24, 25, 26; Defs.' Response to Pls.' ¶¶ 6, 7, 8, 15, 16, 17, 24, 25, 26.)

According to interrogatories from the federal retiree plaintiffs, all three retired from their federal law enforcement agencies in good standing. (*See* Bowen Interrogatory No. 2, Pls. Ex. A, ECF No. 35-1; Jakubiec Interrogatory No. 2, Pls.' Ex. B, ECF No. 35-2; Martinez Interrogatory No. 2, Pls.' Ex. C, ECF No. 35-3.) During the "most recent 12-month period," these plaintiffs have met "the standards for qualification in firearms training for active law enforcement officers, as determined by the State of New Jersey." (Pls.' SUMF ¶¶ 5, 14, 23; Defs.' Response to Pls.' SUMF ¶¶ 5, 14, 23.) They assert that they completed this firearms training "at their own expense." (Pls.' SUMF ¶¶ 5, 14, 23.) Bowen, Jakubiec, and Martinez each submitted an affidavit stating that they are "not under the influence of alcohol or another intoxicating or hallucinatory drug when [they] carr[y] a firearm." (Pls.' SUMF ¶¶ 8, 17, 26; Defs.' Response to Pls.' SUMF ¶¶ 8, 17, 26; Bowen Decl. ¶ 2; Jakubiec Decl. ¶ 2; Martinez Decl. ¶ 2.)

### 2.   Identification Requirements

The parties agree that each of the federal retiree plaintiffs are in possession of "photographic identification issued by [their respective agency] that identifies [them] as having been employed as a police officer or law enforcement officer." (Pls.' SUMF ¶¶ 28, 30, 32; Defs.' Response to Pls.' SUMF ¶¶ 28, 30, 32; Bowen Identification, Harbist Decl., Pls.' Ex. D, ECF No.

13

35-4; Jakubiec Identification, Harbist Decl., Pls.' Ex. F, ECF No. 35-6; Martinez Identification, Harbist Decl., Pls.' Ex. H, ECF No. 35-8.)

Additionally, according to Plaintiffs, each of the federal retiree plaintiffs have the "certification issued by the State in which [they] reside[] or by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State" that certifies the QRLEOs have met "active duty standards . . . as established by the State." (Pls.' SUMF ¶¶ 29, 31, 33); 18 U.S.C. § 926C(d)(2)(B)(1). Each of these plaintiffs submit a copy of a "New Jersey Retired Law Enforcement Officer Firearms Training Record" ("Certification"). (Harbist Decl., Pls.' Ex. E, ECF No. 35-5; Harbist Decl., Pls.' Ex. G, 35-7; Harbist Decl., Pls.' Ex. I, 35-9.)[3]

### 3.    Alleged Injuries

Plaintiffs argue that each of the federal retiree plaintiffs are entitled to carry a firearm under LEOSA but are prevented from doing so because of New Jersey law. (Pls.' Mot. for Summ. J. at 10.) Bowen obtained a Permit, but it expired on August 29, 2021. (Pls.' SUMF ¶ 50.) Bowen turned 75 years old in December 2021, thus making him ineligible for a Permit under N.J.S.A. 2C:39-6(*l*). (*Id.* ¶ 51; Defs.' Response to Pls.' SUMF ¶ 51.) In 2015, Jakubiec applied for a Permit, which was "disapproved by the Superintendent of State Police" because Jakubiec's "former employer . . . refused to endorse and certify [his] application," as required under N.J.S.A. 2C:39-6(l)(2)(d). (Harbist Decl., Pls.' Ex. M, ECF No. 35-13.) Finally, according to Plaintiffs,

---

[3] Bowen's certification is dated October 11, 2019, May 2, 2020, and April 16, 2020 (Pls.' Ex. E); Jakubiec's certification is dated October 26, 2020 (Pls.' Ex. G); and Martinez's certification is dated December 2, 2020 (Pls.' Ex. 10). The State asserts that these submissions are "Firearms Training Record[s] that do[] not specify what the firearms instructor was certified to administer, when [the] [p]laintiff intends to carry a concealed firearm, and what the active duty standards for qualification are." (Defs.' Response to Pls.' SUMF ¶¶ 29, 31, 33.)

Martinez also applied for a Permit but was denied.  (Pls.' SUMF ¶ 53.)  Plaintiffs submit an application without a name on it indicating that the application had been disapproved because the applicant submitted an "incomplete application."  (Harbist Decl., Pls.' Ex. N, ECF No. 35-14.) The State disputes that Plaintiffs' submission (Ex. N) supports that Martinez "applied for, and was not granted," a Permit.  (Defs' Response to Pls.' SUMF ¶ 53.)

    4.    <u>Associational Standing of FLEOA</u>

    In addition to the declarations of the individual federal retiree plaintiffs, Plaintiffs submit an affidavit from Lazaro Cosme ("Cosme"), the president of FLEOA.  (*See* Cosme Decl. ¶ 1.) FLEOA is a "non-profit organization whose purpose includes representing the interests of both active and retired federal and state law enforcement officers in legal and legislative matters." (*Id.* ¶ 2.) Cosme avers that, through his "personal interactions and a survey of [FLEOA's] members," he knows members of FLEOA who: (a) "[r]eside in New Jersey;" (b) "[m]eet the qualifications under [LEOSA];" (c) "[p]ossess photographic identification from their former law enforcement employer that identif[y] [them] as having been employed as a police officer or law enforcement officer;" and (d) have the appropriate certification.  (*Id.* ¶ 3.)

    B.    *New Jersey Retirees Residing in New Jersey*

    Plaintiffs also submit declarations of George Lytwyn ("Lytwyn") and Robert Fox, who are New Jersey retirees residing in New Jersey.[4]  Plaintiffs do not submit these declarations to include

---

[4] Plaintiffs submitted the Lytwyn Declaration (ECF No. 46) and the Fox Supplemental Declaration (ECF No. 45) in their Opposition to the State's Motion for Summary Judgment (ECF No. 44), not in their initial Motion for Summary Judgment (ECF No. 34). The State concedes that these supplemental declarations may be considered when determining whether NJFOP has standing to assert claims for which its identified members have standing (though argues for a limited scope). (Defs.' Reply at 4, ECF No. 54.) Accordingly, the Court accepts these submissions for the standing inquiry.

Lytwyn or Fox as individual plaintiffs but rather to demonstrate that NJFOP has associational standing through the injuries of its members. (Pls.' Opp'n at 12.)

                1.     QRLEO Requirements

Lytwyn resides in New Jersey and worked as a law enforcement officer for the Newark Police Department from December 1964 through May 1992. (Lytwyn Decl. ¶¶ 2, 3.) Prior to his retirement, Lytwyn "was authorized by law to engage in the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and [he] had the statutory powers of arrest or apprehension." (*Id.* ¶ 5.) During the most recent 12-month period, Lytwyn met at his own expense, "the standards for qualification in firearms training for active law enforcement officers, as determined by the State of New Jersey." (*Id.* ¶ 8.) He has done so twice per year since his retirement from the Newark Police Department. (*Id.* ¶ 9.) He has never "been officially found by a qualified medical professional employed by the Newark Police Department or any other agency to be unqualified for reasons relating to mental health[,]" or "entered into an agreement with the Newark Police Department or any other agency in which [he] acknowledged that [he was] not qualified for reasons relating to mental health." (*Id.* ¶¶ 11–12.) Finally, Lytwyn avers that he has not, and will not, be "under the influence of alcohol or any other intoxicating or hallucinatory drug or substance when [he] carr[ies] a firearm, whether pursuant to LEOSA, New Jersey law, or otherwise," and he is not "prohibited by Federal law from receiving a firearm." (*Id.* ¶¶ 13, 14.)

As for Fox, he contends that, as of the date that Plaintiffs filed the Complaint, he was and still is "a retired state law enforcement in good standing residing in New Jersey" and that "he meet[s] LEOSA's qualification standards." (Fox Suppl. Decl. ¶ 9.)

2.    Identification Requirements

Lytwyn submits a "true copy of [his] photographic identification issued by the Newark Police Department, which identifies [him] as having been employed as a law enforcement officer." (Lytwyn Identification, Lytwyn Decl. ¶ 6, Ex. A.) He also submits a "true copy of [his] most recent certification, dated April 7, 2021, indicating [that he has] met the standards for qualification in firearms training for active law enforcement officers, as determined by the State of New Jersey." (Lytwyn Certification, *id.* ¶ 10, Ex. B.)

Fox asserts that he "hold[s] a photographic identification card from [his] former agency, the Cherry Hill Police Department." (Fox Suppl. Decl. ¶ 9, Ex. A.) Fox does not have a Permit, nor has he sought to obtain the requisite certification. (*Id.* ¶ 10.)

3.    Alleged Injuries

Lytwyn's alleged injury is that he is "qualified under LEOSA and [has] a photographic identification issued by a state or local law enforcement agency" but he is "ineligible to obtain [a Permit] from the State of New Jersey" because he is 80 years old. (*Id.* ¶ 15.) He "was previously eligible and did previously receive" a Permit. (*Id.*, Ex. C.) As for Fox, he does not carry a firearm and has not applied for a Permit; however, he would be able to do so if the Court granted the relief sought by NJFOP. (Fox Suppl. Decl. ¶ 10.)

4.    NJFOP

NJFOP is "a non-profit organization, whose purpose includes representing the interests of retired New Jersey State law enforcement officers in legal and legislative matters." (*Id.* ¶ 2). Fox, as the president of NJFOP, avers that other NJFOP members are injured by the New Jersey law. (Fox Decl. ¶ 1, Fox Suppl. Decl. ¶¶ 4–8.) Through his "personal interactions and a survey of [NJFOP's] members," Fox knows NJFOP members who: (a) "[r]eside in New Jersey"; (b) "[m]eet

17

the qualifications under [LEOSA]"; (c) "[p]ossess photographic identification from their former law enforcement employer that identif[y] [them] as having been employed as a police officer or law enforcement officer"; and (d) have the appropriate certification. (*Id.* ¶ 3.) Fox also identifies specific members of NJFOP who retired in good standing from local law enforcement agencies, who reside in New Jersey, and who are under seventy-five years old. (Fox Suppl. Decl. ¶¶ 5–6.)  According to Fox, these members "have been forced to obtain [Permits] in order to avoid prosecution under New Jersey Law, which includes qualifying in active duty firearms training twice per year at their own expense." (*Id.* ¶ 6.)

## VI.    Justiciability

The State raises two justiciability issues:  (1) whether the 2021 Guidelines moot Plaintiffs' claims as to the federal retiree plaintiffs and FLEOA; and (2) whether Plaintiffs adequately asserted NJFOP's standing. (Defs.' Mot. for Summ. J. at 11–18; Defs.' Reply at 4–6, ECF No. 54.)

### A.    *Mootness*

The parties agree that pursuant to the 2021 Guidelines, federal/out-of-state retirees living in New Jersey are permitted to conceal carry their firearms in New Jersey without applying for Permit if they meet the LEOSA requirements. (*See* Defs.' SUMF ¶¶ 10–14; 2021 Guidelines ¶ 8.) The State argues that, because under the 2021 Guidelines, the three federal retiree plaintiffs no longer face prosecution under New Jersey law, their claims are moot. (Defs.' Mot. for Summ. J. at 12.)  Plaintiffs argue that "because the State did not change its preempted law and its unconstitutional conduct is likely to reoccur, [the federal retiree plaintiffs'] claims are not moot." (Pls.' Opp'n at 4.)

Article III's "case or controversy" requirement prevents federal courts from deciding cases that are moot. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (citing *Liner*

*v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964)). "The doctrine of mootness requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003) (quoting *New Jersey Tpk. Auth. v. Jersey Cent. Power*, 772 F.2d 31 (3d Cir. 1985)). "[A] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," *Blanciak*, 77 F.3d at 698 (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)), at which point a "federal court lacks jurisdiction to hear it," *Nextel W. Corp. v. Unity Township*, 282 F.3d 257, 261 (3d Cir. 2002). Thus, a federal court must dismiss a case as moot if "developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief." *Blanciak*, 77 F.3d at 698–99.

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). Otherwise, "the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *Id.* (quoting *City of Mesquite*, 455 U.S. at 289 n.10). Accordingly, "the standard . . . for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203). The party asserting the mootness bears the "heavy burden of persuasion" that the challenged conduct cannot reasonably be expected to recur. *Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203; *Laidlaw*, 528 U.S. at 189.

19

When determining whether a defendant's voluntary cessation of the challenged action renders a claim moot, courts look to the circumstances surrounding the cessation. While unilateral policy change that is "not permanent" does not render a claim moot, amendment of the legal framework governing the case does. *Compare City of Los Angeles v. Lyons*, 461 U.S. 95, 100 (1983) (finding that chief of police's temporary moratorium on choke-holds did not moot claim for relief from chokeholds), *with New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 140 S. Ct. 1525, 1526 (2020) (finding challenges to New York firearms statute moot because the "State of New York amended its firearm licensing statute, and the City amended the rule"); *Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman*, 237 F.3d 186, 194 (3d Cir. 2001) ("Where a law is amended so as to remove its challenged features, the claim . . . becomes moot as to those features."); *and 8 Erie St. JC LLC v. City of Jersey City*, 2020 WL 2611540, at *2 (D.N.J. May 21, 2020) ("An amendment that removes the challenged aspects of statute or ordinance moots a claim for injunctive relief from the challenged law."). Unlike the amendment to the law, a temporary policy may be "lifted at any time" and thus has not "irrevocably eradicated the effects of the alleged violation." *Lyons,* 461 U.S. at 100; *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

Additionally, a court may consider the timing of the voluntary cessation and whether the defendant previously defended the prior action to determine if the voluntary cessation exception to mootness applies. *E.g.*, *United States v. Gov't of Virgin Islands*, 363 F.3d 276, 285–86 (3d Cir. 2004) (finding that the defendant's voluntary cessation of a challenged action "five days after the United States moved to invalidate it, and just two days before the District Court's hearing on the motion . . . strongly suggest[ed] that the impending litigation was the cause of the termination"); *DeJohn v. Temple Univ.*, 537 F.3d 301, 309 (3d Cir. 2008) (finding that university's change of a

challenged policy "more than a year after the commencement of litigation" and "near the end of discovery, less than three weeks before the dispositive motions deadline in the case" did not render plaintiff's claim moot).

Here, the State has not met the "heavy burden" of demonstrating that it will not resume its previous enforcement of the Permit Scheme as-applied to all retired law enforcement officers, not just New Jersey retirees residing in New Jersey. (*See* 2018 Guidelines ¶ 2.) *Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203. First, the State has not asserted that its unilateral change to the 2018 Guidelines is permanent. *Lyons,* 461 U.S. at 100. While the State argues that policy guidance "bind[s] police departments statewide," the 2021 Guidelines are not a change in the legal framework governing the case. *New York State Rifle & Pistol Ass'n, Inc.*, 140 S. Ct. at 1526. Accordingly, the 2021 Guidelines may be "lifted at any time" and the State has not asserted that it has "irrevocably eradicated the effects of the alleged violation."[5] *See Lyons,* 461 U.S. at 100. (*See* Defs.' Mot. for Summ. J. at 12.)

Second, the circumstances surrounding the publication of the 2021 Guidelines support a finding that Plaintiffs' claims are not moot. The State issued the 2021 Guidelines on April 22, 2021, almost one year after the commencement of this action (*i.e.*, at the close of discovery) but one month before Plaintiffs filed their Motion for Summary Judgment. (*See* ECF Nos. 1, 26–33, 34); *DeJohn*, 537 F.3d at 309. Notably, this occurred after the State filed and withdrew a Motion to Dismiss Plaintiffs' Complaint, to which the United States filed a statement of interest in opposition. (*See* ECF Nos. 10, 18, 21, 22.) The fact that the State issued the 2021 Guidelines after

---

[5] Additionally, the Court is not convinced that the 2021 Guidelines is such a "binding" policy statement. The document is titled "Frequently Asked Questions" and appears to be published to the public. *See* https://nj.gov/njsp/firearms/pdf/LEOSA_FAQ_20210422.pdf.

discovery and before the filing of the Motions for Summary Judgment suggests that the "impending litigation was the cause of the termination [of the 2018 Guidelines]." *See Gov't of Virgin Islands*, 363 F.3d at 285.  Based on the unilateral and non-permanent nature of the policy change along with the timing and circumstances of their issuance, the State has not met its burden of making it "absolutely clear" that the 2021 Guidelines "resolves plaintiff[s'] personal stake in the outcome of a suit or prevent[s] a court from being able to grant the requested relief circumstances." *Laidlaw*, 528 U.S. at 189; *Blanciak*, 77 F.3d at 698–99.  Thus, the Court finds that the claims made by the federal retiree plaintiffs and FLEOA are not moot.

B.     *Standing*

To establish Article III standing, a plaintiff must show (1) "that he is under threat of suffering 'injury in fact' that is concrete and particularized"; (2) "the threat must be actual and imminent, not conjectural or hypothetical"; (3) "it must be fairly traceable to the challenged action of the defendant"; and (4) "it must be likely that a favorable judicial decision will prevent or redress the injury." *Laidlaw*, 528 U.S. at 180; *Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 825 F.3d 149, 165 (3d Cir. 2016) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

1.     Sufficiency of Plaintiffs' Evidence

"[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "In response to a summary judgment motion, . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. R. Civ. P. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Id.* (internal citation corrected).

Here, Plaintiffs have submitted affidavits and interrogatories of federal retiree plaintiffs, affidavits of the presidents of FLEOA and NJFOP, and the affidavit of an individual member of NJFOP. (*See* Martinez Decl.; Jakubiec Decl.; Bowen Decl.; Cosme Decl.; Bowen Interrogatories; Jakubiec Interrogatories; Martinez Interrogatories; Lytwyn Decl.; Fox Decl.; Fox Suppl. Decl.) Plaintiffs submit photographic identifications demonstrating that these individuals retired from various law enforcement agencies, (Bowen Identification; Jakubiec Identification; Martinez Identification), and records certifying that they completed firearms qualifications for active duty officers, (Bowen Certification; Jakubiec Certification; Martinez Certification; Lytwyn Certification).[6] The Court finds that these submissions sufficiently set forth "specific facts" that the federal retiree plaintiffs and Lytwyn are QRLEOs with LEOSA-compliant identification. *See Lujan*, 504 U.S. at 561.

　　　2.　　Injury-in-Fact

To allege an injury-in-fact, Plaintiffs must show that they have suffered "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). Organizations or associations "are unable to establish standing solely on the basis of

---

[6] By their own terms, the certification records fall within standards for "certification" under LEOSA, 18 U.S.C. § 926C(d)(2)(B). Each certification states:

> "The Retired Law Enforcement firearms qualifications courses listed above have been reviewed by the New Jersey State Police and the Attorney General's Office. These courses meet State firearms standards as outlined by the Police Training Commission and as required by Federal Statute as prescribed in the Retired Law Enforcement Officer Safety Act (HR 218 18 USC 921).

(Bowen Certification; Jakubiec Certification; Martinez Certification; Lytwyn Certification.) And, with respect to the identifications, Martinez's identification states that he "is a Retired Law Enforcement Officer, as per [LEOSA]," and Bowen's identification notes at the top "Firearm Identification Card" and "Law Enforcement Officers Safety Act." (Martinez Identification; Bowen Identification.)

institutional interest in a legal issue." *Pennsylvania Prison Soc'y v. Cortes*, 508 F.3d 156, 162 (3d Cir. 2007). Instead, an organization may assert standing (a) through direct injury to the organization or (b) as a representative of injured members of the organization. *See id.* at 163.

Plaintiffs' alleged injury is that, despite being qualified and having the requisite identification under LEOSA, they face prosecution for carrying a firearm in New Jersey without a Permit or for carrying a firearm that uses hollow point ammunition under N.J.S.A. 2C:39-5(b), 2C:39-6(l), and 2C:39-3(f). (*See* Pls.' Mot. for Summ. J. at 13, 20.)

"[W]hen the suit is one challenging the legality of government action or inaction" and "the plaintiff is himself an object of the action . . . at issue[,] . . . there is ordinarily little question that the action or inaction has caused him injury." *Lujan*, 504 U.S. at 561–62; *see also id.* at 563 (stating that the injury-in-fact test requires "more than an injury to a cognizable interest" but rather it requires "the party seeking review be himself among the injured"); *Free Speech Coal., Inc. v. Att'y Gen. United States*, 825 F.3d 149, 166 (3d Cir. 2016) ("Sufficient injury exists to confer standing where 'the regulation is directed at [Plaintiffs] in particular; it requires them to make significant changes in their everyday business practices; [and] if they fail to observe the . . . rule they are quite clearly exposed to the imposition of strong sanctions,' even where there is no pending prosecution." (quoting *Pic–A–State Pa., Inc. v. Reno*, 76 F.3d 1294, 1300 (3d Cir. 1996) (alterations in original))).

Here, the federal retiree plaintiffs and NJFOP's member (Lytwyn) have asserted they may carry a firearm under federal law but may face prosecution for doing so under New Jersey law. Thus, they are the "object" of the challenged state law. *Lujan*, 504 U.S. at 561–62. These individuals are "among the injured" of the allegedly conflicting state law because they are "qualified" and have "identification" under LEOSA. *See Lujan*, 504 U.S. at 561–63. They,

24

however, are faced with the decision to make changes in their daily practices, insofar as they may not lawfully carry a firearm, or expose themselves "to the imposition of strong sanctions." *Free Speech Coal., Inc.*, 825 F.3d at 166 (internal quotations omitted).  The Court, therefore, finds that Plaintiffs have asserted injury to satisfy Article III standing.

        3.    Associational Standing

To establish associational standing, an organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Laidlaw*, 528 U.S. at 181. "Sufficient injury exists to confer standing where the regulation is directed at [the plaintiffs] in particular; it requires them to make significant changes in their everyday business practices; [and] if they fail to observe the . . . rule[,] they are quite clearly exposed to the imposition of strong sanctions, even where there is no pending prosecution." *Free Speech Coal.*, 825 F.3d at 166 (internal quotations omitted); *see also Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 147–48 (3d Cir. 2000) (finding standing and ripeness when the statute could "fairly easily" be read to prohibit the plaintiffs' constitutionally-protected conduct, the statute threatened plaintiffs "with severe civil penalties," and plaintiffs "received no assurances that [the statute] would not be enforced against them").

25

The Court finds that FLEOA and NJFOP meet these requirements. First, Plaintiffs have alleged injury as to the individual members of both FLEOA and NJFOP.[7] *See* Discussion *supra* VI.B.2. Second, one of FLEOA's purpose includes "representing the interests of both active and retired federal and state law enforcement officers in legal and legislative matters." (*See* Cosme Decl. ¶ 2.) One of NJFOP's purpose includes "representing the interests of retired New Jersey State law enforcement officers in legal and legislative matters." (*See* Fox. Decl. ¶ 2.) Thus, the interests that the association plaintiffs seek to protect—namely, the ability of Qualified Members to carry a firearm—are "germane to the organization[s'] purpose." *Hunt*, 432 U.S. at 343; *see also Cortes*, 622 F.3d at 229 (finding that interests related to the commutation process were germane to the purpose of a criminal justice advocacy organization); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 258 (3d Cir. 2005) (finding that a suit to clean up a former chemical plant was germane to the purpose of an organization committed to "improv[ing] . . . the quality of life" of the citizens of the county); *New Jersey Civ. Just. Inst. v. Grewal*, 2021 WL 1138144, at *3 1(D.N.J. Mar. 25, 2021) (finding that a suit resolving a conflict in laws regarding an employer's ability to enter into arbitration agreements was germane to the interests of organizations that advocated business growth and fair dispute resolution).

---

[7] The State claims that NJFOP's standing is "limited in scope." (Defs.' Reply to Pl's Opp'n at 4–6, ECF No. 54.) The Court disagrees. The State argues that NJFOP has standing to pursue the following claims: (1) "notwithstanding the State's age requirement of 75 for [a Permit], individuals like Lytwyn should nevertheless be able to carry firearms"; and (2) "the State cannot impose requirements for getting [a Permit], such as that applicants pay for their own firearms training and complete it twice a year." (*Id.*) Regardless of which portion of the Permit Scheme NJFOP challenges, the issue here remains the same: whether a QRLEO with proper identification under Section 926C(d), such as Lytwyn, may carry firearms notwithstanding New Jersey's Permit Scheme.

Finally, the claim asserted does not require the participation of individual members in the lawsuit. This prong of the associational standing test is a "judicially self-imposed" limit for purposes of "administrative convenience and efficiency." *United Food and Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996). Under this prong, "conferring associational standing is improper for claims requiring a fact-intensive-individual inquiry." *Free Speech Coal. v. Att'y Gen. U.S.*, 974 F.3d 408, 421 (3d Cir. 2020) (internal quotation marks omitted); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 262 n.25 (3d Cir. 2014) (concluding that an organization lacked standing to sue on behalf of its members because of the "highly individualized nature" of the claims).

Here, the question before the Court is purely legal —whether a QRLEO with identification pursuant to LEOSA may carry firearms notwithstanding New Jersey law. Thus, in finding associational standing, the Court is not required to undertake the "fact-intensive-individual inquir[ies]," that would make associational standing untenable. *See Free Speech Coal.*, 974 F.3d at 421. Additionally, the relief requested—a declaration and injunction—may be sought by FLEOA and NJFOP on behalf of their members. *See Hunt*, 432 U.S. at 343.

### 4.   Causation and Redressability

The Court finds that the standing elements of causation and redressability are also satisfied. Plaintiffs' injuries derive from the enactment and future enforcement of both the Permit Scheme and the prohibition on hollow point ammunition. Under the New Jersey law, the State can bring an enforcement action to penalize the federal retiree plaintiffs and members of FLEOA and NJFOP for violating N.J.S.A. 2C:39-5(b), 2C:39-6(l), and 2C:39-3(f). Thus, Plaintiffs' injuries flow directly from Defendant's actions. *See Lujan*, 504 U.S. at 561–62 (finding that, where a plaintiff is the object of a challenged government action, "a judgment preventing . . . the action will redress

27

[his injury])"; *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 77–78 (1978) (applying a "but for" test to the causation analysis).

Additionally, it is likely that a declaratory judgment stating that N.J.S.A. 2C:39-5(b), 2C:39-6(l), and 2C:39-3(f) are preempted by LEOSA as-applied to Plaintiffs and an injunction enjoining the State from enforcing the law as-applied to Plaintiffs will prevent Plaintiffs' injuries. This would allow, as Plaintiffs request, for QRLEOs with LEOSA-compliant identification to carry a firearm without being prosecuted or applying for a Permit under the Permit Scheme. *See Laidlaw*, 528 U.S. at 185–86 (reasoning that "for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress"). Therefore, the Court concludes that both the federal retiree plaintiffs along with FLEOA and NJFOP, through their members, have standing to challenge the Permit Scheme and the prohibition on hollow point ammunition.

## VII.  Preemption Under LEOSA

Having determined Plaintiffs' standing, the Court proceeds to the merits of Plaintiffs' claims. In Count II, Plaintiff seeks declaratory and injunctive relief that LEOSA preempts the following New Jersey laws: (1) requiring QRLEOs to apply for a Permit or otherwise face prosecution for carrying a firearm under N.J.S.A. 2C:39-5(b) and 2C:39-6(*l*); and (2) prohibiting QRLEOs from carrying firearms that use hollow point ammunition, N.J.S.A. 2C:39-3(f). (Compl. ¶¶ 74–80.)

### A.   *Declaratory Judgment Act*

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

28

of any interested party seeking such declaration, whether or not further relief is or could be sought."

28 U.S.C. § 2201(a).  The State argues that Plaintiff's preemption challenge cannot move forward

because the Declaratory Judgment Act does not provide an independent source of jurisdiction.

(Defs.' Mot. for Summ. J. at 27.)  The Court agrees that the Declaratory Judgment Act "does not

create a cause of action courts may be compelled to enforce." *In re AZEK Bldg. Prod., Inc., Mktg.

& Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 625 (D.N.J. 2015) (citing *Wilton v. Seven Falls Co.*, 515

U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial

arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new

form of relief to qualifying litigants.")).

However, where an actual controversy exists, a plaintiff may seek declaratory relief.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  "[T]he phrase 'case of actual

controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under

Article III." *Id.*  Such disputes must raise a "substantial controversy, between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." *Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273

(1941)).  "[W]here threatened action by government is concerned," plaintiffs may challenge "the

constitutionality of a law threatened to be enforced" without eliminating Article III jurisdiction.

*Id.* at 128–29 (citing cases where the court allowed a plaintiff to "seek declaratory judgment

regarding the constitutionality of a state statute"); *see also New Jersey Civ. Just. Inst.*, 2021 WL

1138144, at *3 (hearing challenge to state law on preemption grounds and issuing relief under the

Declaratory Judgment Act).  "The plaintiff's own action (or inaction) in failing to violate the law

eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III

jurisdiction." *Id.* at 127, 129 (stating that "the very purpose of the Declaratory Judgment Act [is]

to ameliorate" the need for plaintiffs to make a "choice between abandoning [their] rights or risking prosecution").

Here, Plaintiffs bring a pre-enforcement challenge to laws that the State may enforce against them. *MedImmune, Inc.*, 549 U.S. at 128–29; (Compl. ¶¶ 75–79.) Plaintiffs do not bring a standalone "count" under the Declaratory Judgment Act but have rather set forth specific evidence as to why an actual controversy exists. (*See* Discussion *supra* VI.B; *compare* Compl. ¶¶ 75–89 (seeking declaration as remedy for preemption claim and specifying the specific "controversy" between the federal and state laws)), *with In re AZEK Bldg. Prod., Inc., Mktg. & Sales Pracs. Litig.*, 82 F. Supp. 3d at 625 (dismissing standalone cause of action for declaratory judgment). This is a "substantial controversy" in which both parties have adverse legal interests: Plaintiffs have an interest, in their individual and associational capacity, to carry firearms notwithstanding New Jersey law, and the State has an interest in upholding its statutory scheme.

B.    *Preemption Challenge*

The Court must determine whether, as Plaintiffs argue, LEOSA directly conflicts with the Permit Scheme, (Pls.' Mot. for Summ. J. at 15), or whether, as the State argues, the Permit Scheme is the State's exercise of its discretion under LEOSA's "identification" requirement, (Defs.' Mot. for Summ. J. at 32–33).

The State concedes that "retired federal and out-of-state officers who obtained the appropriate [LEOSA] identification from their former agencies can carry in New Jersey" without a Permit. (*Id.* at 2.) According to the State, however, New Jersey laws "govern public carrying by officers who retired from *New Jersey* agencies," pursuant to the State's discretion in issuing "identification" under subsection (d) of LEOSA. (*See id.* at 2.) The State further argues that "the [Permit] *is* the State's version of LEOSA identification" and that LEOSA "grants states discretion

30

to establish 'active duty standards for qualification in firearms training' and certify . . . the individual as someone who was 'employed as a police officer or law enforcement officer.'" (*Id.* at 31–32 (quoting 18 U.S.C. § 926C(d)(1)-(2).)

The scope of Plaintiffs' preemption argument is narrow. Plaintiffs argue that subsection (a) of LEOSA preempts the Permit Scheme as-applied to them because they meet the "qualification" and "identification" requirements of that subsection. 18 U.S.C. § 926C(a); (Pls.' Opp'n at 28.) Plaintiffs concede that the State retains the discretion to set its firearms standards and direct its law enforcement agencies to issue (or not issue) photographic identification pursuant to subsection (d) of LEOSA. (Pls.' Opp'n at 28–29); *see also Carey v. Throwe*, 957 F.3d 468, 481 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1054 (2021) (finding that LEOSA could not be read to impose "a binding obligation on the States to issue concealed carry permits") (internal quotation marks omitted); *Moore v. Trent*, Civ. No. 09-1712, 2010 WL 5232727, at *4 (N.D. Ill. Dec. 16, 2010) (noting that states hold onto their "authority in establishing eligibility requirements for qualified retired law enforcement officers"). Plaintiffs seek only a declaration that "[t]he State cannot arrest and prosecute individuals who are LEOSA-qualified and already have that identification, such as the individual Plaintiffs and members of the associational Plaintiffs." (Pls.' Opp'n at 29.) For the following reasons, the Court grants this request.

"Conflict preemption occurs where there is a conflict between a state law and a federal law." *PPL EnergyPlus, LLC v. Hanna*, 977 F. Supp. 2d 372, 410 (D.N.J. 2013), *aff'd sub nom. PPL EnergyPlus, LLC v. Solomon*, 766 F.3d 241 (3d Cir. 2014); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("[E]ven if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute."). "[C]onflict preemption results when state law 'stands as an obstacle to the accomplishment and execution of the full

31

purposes and objectives of Congress.'" *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 339 (3d Cir. 2009) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 269 (3d Cir. 2004). "When confronting arguments that a law stands as an obstacle to Congressional objectives, a court must use its judgment: 'What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.'" *PPL EnergyPlus, LLC*, 977 F. Supp. 2d at 410 (quoting *Crosby*, 530 U.S. at 372).

The Court finds that the Permit Scheme and the prohibition on hollow point ammunition, as-applied to Plaintiffs, "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 339 (3d Cir. 2009) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Beginning with the plain language, the "notwithstanding" clause of the statute suggests Congress's intent to override state and local laws regulating QRLEOs with proper identification. *DuBerry*, 824 F.3d at 1052 ("The statute reads that Congress used categorical language in the 'notwithstanding' clause of subsection (a) to preempt state and local law to grant qualified law enforcement officers the right to carry a concealed weapon."); *see also In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 369 (3d Cir. 2012) (citing cases in which courts of appeals interpreted "notwithstanding" language "to supersede all other laws, stating that '[a] clearer statement is difficult to imagine'") (*quoting Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (collecting cases that say the same)).

Additionally, the Congressional findings show that Congress intended LEOSA to "override State laws" and "allow current and retired police officers to carry a concealed weapon in any of the 50 States." H.R. REP. 108-560, 4, 2004 U.S.C.C.A.N. 805, 806. The "purpose and summary" of the law states:

> Current law allows an individual State to decide whether or not it wishes to allow out-of-State officers to carry a concealed weapon within that State's borders. Current law allows active, but not retired, Federal law enforcement officers to carry a concealed weapon anywhere within the jurisdiction of the United States. However, it does not allow active and retired State and local law enforcement officers to carry a concealed weapon without the permission of each specific State.
>
> H.R. 218, the "Law Enforcement Officers Safety Act of 2003," would override State laws and mandate that retired and active police officers could carry a concealed weapon anywhere within the United States.

H.R. REP. 108-560, 3, 2004 U.S.C.C.A.N. 805 (emphasis added).

This legislative history shows that, prior to LEOSA, the law *already* allowed what the State clarified in the 2021 Guidelines—that "out-of-state" and "federal" law enforcement officers may carry a concealed weapon in other states. *Id.* (Defs.' Mot. for Summ. J. at 11.) When Congress passed LEOSA, the current law "[did] not allow active and retired *State and local law enforcement officers* to carry a concealed weapon without the permission of each specific State." *Id.* (emphasis added). Accordingly, the Congressional Record explains that LEOSA would "override" these state laws and create "uniformity and consistency" around the ability for retired law enforcement officers to carry firearms. *Id.*; S. REP. 108-29, 4 (stating that "[t]oday, a complex patchwork of Federal, state and local laws govern the carrying of concealed firearms for current and retired law enforcement officers," and LEOSA "addresses this need by establishing national measures of uniformity and consistency to permit law enforcement officers to respond immediately to a crime when off duty, as well as to protect officers and their families from vindictive criminals"). Allowing a state to impose additional requirements for its own state retirees does not comport with this goal of "uniformity and consistency." S. REP. 108-29, 4; *see also* H.R. REP. 108-560, 4

33

("This legislation would allow current and retired police officers to carry a concealed weapon in any of the 50 States.")[8]

Here, LEOSA allows a QRLEO with identification to carry a firearm, and New Jersey law subjects such an individual to prosecution unless they have a Permit.   18 U.S.C. § 926C(a); N.J.S.A. 2C:39-5(b); N.J.S.A. 2C:39-6(l).   Given the Congressional intent to achieve uniformity amongst state laws regulating retired law enforcement officers' ability to carry firearms, New Jersey's prohibition on the rights conferred under LEOSA frustrates the "full purposes and objectives of Congress" in passing LEOSA. *See PPL EnergyPlus*, 977 F. Supp. 2d at 407, 411 (finding conflict preemption when state law "create[d] an obstacle" to the federal preference in wholesale of electricity, despite federal and state schemes not being mutually exclusive). *See also* 18 U.S.C. § 927 ("No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, *unless there is a direct and positive conflict between such provision and the law of the State* so that the two cannot be reconciled or consistently stand together." (emphasis added)).

Further, case law discussing Section 926C(a) supports a finding that state law may not prohibit QRLEOs with the requisite identification from carrying a firearm.   As the United States outlined in its "Statement of Interest" at the Motion to Dismiss stage, "three federal courts of appeals and several district courts have affirmed" that "'a qualified retired law enforcement officer . . . who is carrying the identification required' by LEOSA [may] 'carry a concealed

---

[8] An interpretation of LEOSA as preempting state laws as to state and local retirees does not violate the interstate commerce clause because it regulates firearms, which courts have understood to travel in interstate commerce or "substantially affect" interstate commerce. *United States v. Morrison*, 529 U.S. 598, 609 (2000).

firearm' '[n]otwithstanding any other provision of any State . . . .'" (United States Statement of Interest at 3, ECF No. 21.) *See Carey*, 957 F.3d at 478; *Burban*, 920 F.3d at 1277; *DuBerry*, 824 F.3d at 1046; *Cole v. Monroe Cty.*, 359 F. Supp. 3d 526, 533 (E.D. Mich. 2019); *Henrichs v. Ill. Law Enf't Training & Standards Bd.*, 306 F. Supp. 3d 1049, 1052 (N.D. Ill. 2018).

The State relies on *Burban*, *Carey*, and district court cases that discuss whether, under Section 1983, there is a private right of action to compel states to issue identification under subsection (d) of LEOSA. (*See* Defs.' Mot. for Summ. J. at 22, 30–31.) These holdings have no bearing on the question before this Court—whether a QRLEO with proper identification under LEOSA may carry a firearm without a Permit and without risk of prosecution. *See, e.g., Carey*, 957 F.3d at 478–79 (challenging the state's rescission of identification and seeking that the state "reinstat[e]" his identification); *Burban*, 920 F.3d at 1277 (finding that LEOSA does not compel states "to give agency-issued, LEOSA-compliant identification to retired law enforcement officers"); *Henrichs*, 306 F. Supp. 3d at 1056 (finding no right of action existed to compel state agencies to issue identification). These cases support what Plaintiffs argue—that QRLEOs with identification *may* carry firearms despite state law imposing further restrictions. *See Burban*, 920 F.3d at 1277, 1279 (11th Cir. 2019) (stating that "LEOSA permits qualified active and retired law enforcement officers who meet certain conditions to carry a concealed firearm anywhere in the United States, even if State or local law would ordinarily prohibit it"); *Carey*, 957 F.3d at 478 ("LEOSA permits retired law enforcement officers, under certain conditions, to carry a concealed firearm notwithstanding most state or local laws.").

The State argues that the Permit Scheme is permissible because LEOSA grants states discretion to issue identifications and set firearms standards. (*See* Defs.' Mot. for Summ. J. at 30, 32); *see also, e.g., Carey*, 957 F.3d at 480; *Moore*, 2010 WL 5232727, at *4. The Court, and

35

Plaintiffs, agree that the State has this authority. (*See* Pls.' Sur-Reply at 7.) The State has exercised

this authority by issuing the identification and/or certifications to Plaintiffs. (Bowen Certification;

Jakubiec Certification; Martinez Certification; Lytwyn Certification; Martinez Identification;

Bowen Identification; Jackubiec Identification; Lytwyn Identification.).  Pursuant to subsection

(a) of LEOSA, QRLEOs may carry a firearm without having to apply for a Permit.  Thus, a state

law imposing additional requirements and prohibiting hollow point ammunition conflicts with the

enumerated requirements under Section 926C(a).[9]

Accordingly, the Court has examined the federal statute as a whole and identified its

purpose and intended effects.  The Court finds that LEOSA preempts the Permit Scheme and

prohibition on hollow point ammunition.  The Court grants Plaintiffs' request for a declaration that

subsection (a) preempts the Permit Scheme and prohibition on hollow point ammunition, as-

applied to Plaintiffs.   The Court's finding is supported by Congressional intent, case law

interpreting subsection (a), the plain language and "notwithstanding provision" in the statute, and

the conflict between LEOSA, which grants QRLEOs the ability to carry a firearm with proper

identification, and the additional requirements and restrictions imposed by the Permit Scheme.

C.     *Anti-Commandeering Doctrine*

The Court also finds that its determination—that LEOSA preempts the Permit Scheme as-

applied to QRLEOs with the requisite identification—does not run afoul of the anti-

commandeering doctrine.  The Tenth Amendment's anti-commandeering principle prohibits the

---

[9]The Permit Scheme conflicts with LEOSA by adding a 75-year-old age limit and a semi-annual certification, and by allowing the Superintendent to deny any Permit application in his discretion.  The prohibition on hollow point ammunition conflicts with LEOSA, insofar as it prohibits hollow point ammunition while LEOSA allows it. N.J.S.A. 2C:39-3(f),

federal government from "compel[ling] the States to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. 898, 925 (1997). Thus, Congress lacks the power to issue direct orders to state governments, "issue directives requiring the States to address particular problems," or "command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Id.* at 935.

The State argues that a finding of preemption in this instance "would 'directly force state law enforcement agencies to issue certain identification as part of a federal concealed carry scheme'" in violation of the Tenth Amendment. (Defs.' Mot. for Summ. J. at 38 (quoting *Carey*, 957 F.3d at 481)). The Court's interpretation, however, is limited to QRLEOs who already have the LEOSA-compliant identification under § 926C(d), such as Plaintiffs. Thus, granting the declaratory relief requested on preemption grounds does not "compel the State to implement" a conceal carry permit scheme, *see Printz*, 521 U.S. at 925, but rather allows the State to retain its authority to issue identification under subsection (d). (*See* Pls.' Sur-Reply at 7 ("[I]f the State wants to stop retired state officers from exercising the right to carry under subsection (a), it can order its law enforcement agencies not to issue photographic identification to retirees . . . .")

Accordingly, the Court finds that LEOSA preempts the Permit Scheme and prohibition on hollow point ammunition as-applied to Plaintiffs and QRLEOs who already have "identification" pursuant to subsection (d). Pursuant to 28 U.S.C. § 2201(a), the Court hereby declares that N.J.S.A. § 2C:39-5, N.J.S.A. § 2C:39-6(l), and N.J.S.A. § 2C:39-3(f) violates the Supremacy Clause of the United States Constitution.

## VIII.  Section 1983

Plaintiffs also argue that they are entitled to declaratory and injunctive relief under Section 1983 because the State has deprived them of their right to carry under subsection (a) of LEOSA.

(*See* Pls.' Mot. for Summ. J. at 27.)   Section 1983 allows an individual to sue a "person" who, acting "under color of any statute [or] ordinance . . . of any State," deprives that individual of "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.   The Court has interpreted this to include federal statutes. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).

A.   *State Action Requirement*

Plaintiffs assert, and Defendants do not contest, that the state action requirement is met because the challenged laws are state statutes for which the State is responsible for enforcing through the Attorney General and Superintendent of State Police. (Pls.' Mot. for Summ. J. at 27.) "To establish a claim under § 1983, a plaintiff 'must establish that she was deprived of a federal constitutional or statutory right by *a state actor*.'" *Frierson v. St. Francis Med. Ctr.*, 525 F. App'x 87, 90 (3d Cir. 2013) (quoting *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)) (emphasis added). "Government officials who are statutorily tasked with taking enforcement actions against Plaintiffs are proper defendants in cases challenging the constitutionality of those actions." *Kendrick v. Bruck*, Civ. No. CV 21-6231, 2022 WL 538422, at *8 (D.N.J. Feb. 23, 2022). *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535-36 (2021) (concluding that claims against executive directors of state health agencies are not barred by sovereign immunity because they "may or must take enforcement actions" against the plaintiffs according to the challenged statute). The Court agrees with Plaintiffs and finds that the state action requirement is met.

B.   *Deprivation of Rights*

The parties disagree as to the "right" at issue in this case. Plaintiffs argue that under Section 926C(a), LEOSA grants an individual a right to carry a firearm if the individual is (1) a QRLEO and (2) has the requisite identification. (Pls.' Opp'n at 24.) The State asserts that because Section

926C(a) incorporates by reference Section 926C(d), the right at issue is whether the States must issue identification under subsection (d). (*See* Defs.' Mot. for Summ. J. at 19–20.) The State relies on cases where courts have determined that Section 1983 does not confer a right of action to compel states to issue identification under subsection (d).

"To state a claim under § 1983, a plaintiff must show the violation of a right secured by the Constitution and laws of the United States, and that the alleged deprivation was committed by a person acting under color of State law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Under Section 1983, a plaintiff must assert the violation of a federal *right*, not merely of federal *law*. *Blessing*, 520 U.S. at 340 (emphasis added). A plaintiff bringing a Section 1983 claim must articulate a "well-defined claim" so the court can "determine whether or not a statute created such rights." *Id.* Thus, to bring a claim under Section 1983, the statute must create a private right of action under which a plaintiff can sue. *Id.*

To determine whether a right of action exists, courts consider three factors: "(1) whether the plaintiff is an intended beneficiary of the statute; (2) whether the plaintiff's asserted interests are not so vague and amorphous as to be beyond the competence of the judiciary to enforce; and (3) whether the statute imposes a binding obligation on the State." *Id.* at 329–30. "The Supreme Court has also clarified that the *Blessing* factors collectively amount to a high bar, and that "anything short of an unambiguously conferred right" cannot sustain a private remedy under § 1983." *Carey*, 957 F.3d at 479 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)).

Accordingly, the Court must look to the statute itself to determine whether Congress intended to include a private right of action. However, before doing so, the Court makes a distinction between the right at issue here and the right at issue that has already been analyzed by several courts as it pertains to LEOSA. The right at issue here is whether LEOSA grants an

individual the right to carry the firearm when the individual is a QRLEO and has the requisite

identification under LEOSA.  This case is distinguishable from cases like *Carey* and *Henrichs*

because, in those cases, the plaintiffs sought relief under Section 1983 because the relevant agency

had not issued the discretionary LEOSA identification outlined under Section 926C(d). *See* Carey,

957 F.3d at 478–79 (2021) ("Carey's claim is that he is objectively a "qualified" retired law

enforcement officer under LEOSA, satisfying the Act's first condition, but that defendants . . .

improperly rescinded his state-issued identification out of retaliation, preventing him from

satisfying [the Act's] second [condition]. He seeks relief under [Section] 1983 to get his LEOSA

card reinstated and vindicate what he says is his right under the Act to carry a concealed firearm.");

*Henrichs*, 306 F. Supp. 3d at 1055 ("Although Congress may have intended that LEOSA benefit

*some* retired law enforcement officers, it did not intend that LEOSA benefit *our* [p]laintiffs, for

while they may be 'qualified retired law enforcement officers' under LEOSA, they do not have

the required agency-issued identification." (emphasis in original)). *See also Johnson v. N.Y. State

Dep't of Corr. Servs.*, 709 F. Supp. 2d 178, 185 (N.D.N.Y. 2010) ("[P]laintiffs are not presently a

member of the class of individuals . . . whom LEOSA was intended to benefit because they concede

that they do not possess the requisite identification."); *Friedman v. Las Vegas Metro. Police Dep't*,

Civ. No. 14-0821, 2014 WL 5472604, at *4–5 (D. Nev. Oct. 24, 2014) (same); *Moore*, 2010 WL

5232727, at *4 (same). *D'Aureli v. Harvey*, Civ. No. 17-363, 2018 WL 704733, at *4 (N.D.N.Y.

Feb. 2, 2018) ("Federal and state courts have repeatedly concluded that there is no enforceable

right to identification under LEOSA as implementation has been left to the discretion of the

States.").

Those cases determined whether refusal to issue identification under Section 926C(d) is

actionable under Section 1983.  Therefore, those cases are inapposite because identification is not

at issue in this case. Plaintiffs here are QRLEOs who already carry the requisite identification outlined under Section 926C(d). Thus, Plaintiffs are in a distinctly different position than the aggrieved parties in those cases. Plaintiffs, including the federal retiree plaintiffs and Lytwyn through NJFOP, have already been issued LEOSA-compliant identifications but are unable to carry because they either have been denied a Permit or run the risk of being prosecuted under New Jersey law. Plaintiffs in this case seek injunctive relief because of the conflicting state law that imposes further restrictions on their ability to carry despite meeting all the requirements under LEOSA. Thus, the right at issue here is different than the right analyzed in those cases that have found no cause of action under Section 1983. That being said, the Court will now consider the *Blessing* factors to determine whether LEOSA creates a private right of action.

   1.  Intended Beneficiary of the Statute

  The Court first considers whether Plaintiffs are the intended beneficiaries of LEOSA. First, the plain text of LEOSA "grants retired law enforcement officers a right to carry a concealed firearm '[n]otwithstanding any other provision of the law of any State or any political subdivision thereof.'" *DuBerry*, 824 F.3d at 1052; 18 U.S.C. § 926C(a). The statute uses "rights-creating language" and "individually focused terminology." *Gonzaga Univ.*, 536 U.S. at 284, 287. It allows an individual who is a "qualified retired law enforcement officer" with the requisite "identification" to carry a concealed firearm. 18 U.S.C. § 926C(a). As explained in *DuBerry*, "Congress used categorical language in the 'notwithstanding' clause of subsection (a), to preempt state and local law to grant qualified law enforcement officers the right to carry a concealed weapon." 824 F.3d at 1052.

  In *Carey*, the Fourth Circuit found that LEOSA "lacks any express rights-creating language" because it uses "precatory rather than mandatory language." *Carey*, 957 F.3d at 479.

The Fourth Circuit explained that "certain qualified officers 'may' carry concealed firearms under certain circumstances," and the use of the word "may" implies some degree of discretion. *Id.*; 18 U.S.C. § 926C(a). It noted that Congress often speaks in clearer and more compulsory terms when it intends to create a right. However, as previously noted, the right at issue in *Carey* differs from the right at issue in this case.

"LEOSA does not give concealed carry rights to *any* individual who satisfies its definition of 'qualified retired law enforcement officer.'" *Henrichs*, 306 F. Supp. 3d at 1055 (emphasis in original). Instead, "LEOSA gives such rights to a 'qualified retired law enforcement officer' *only* if that individual has 'the identification required by subsection (d).'" *Id.* (emphasis in original). Accordingly, the Court finds that Congress intended Plaintiffs Bowen, Jakubiecs, and Martinez, along with individuals like Lytwyn from the NJFOP, to benefit from 18 U.S.C. § 926C because these individuals are QRLEOs who *already* meet the identification requirements under federal law to carry firearms but are otherwise prohibited from doing so in New Jersey because of the Permit Scheme or because they otherwise run the risk of prosecution.

2.    Vague and Amorphous Rights

The Court next considers whether the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. "LEOSA sets specific requirements for 'qualified law enforcement officers' in historical and objective terms." *DuBerry*, 824 F.3d at 1053. The definition of a QRLEO "is based on the service requirements of the officers former law enforcement agency and the circumstances at the time of the officer's retirement." *Id.* *See* 18 U.S.C. § 926C(c). Similarly, the identification requirement is clearly defined under Section 926C(d). Therefore, the Court agrees with the District of Columbia Circuit:

LEOSA "falls on the side of statutes that are not so vague as to be judicially unenforceable, even where the states may retain some compliance discretion." *DuBerry*, 824 F.3d at 1053.

### 3.      Binding Obligation on the State

Next, the Court will consider whether Section 926C imposes a binding obligation on the State.   In *DuBerry*, the court found that "LEOSA imposes a mandatory duty on the states to recognize the right it establishes." 824 F.3d at 1053. LEOSA "is more than a mere congressional preference for a certain kind of conduct but rather provides a substantive right." *Id.* (quoting *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 509–10 (1990)) (internal quotations omitted).  As explained in  *DuBerry*, this "is evident from the categorical preemption of state and local law standing in the way of the LEOSA right to carry, . . . the nature of the ministerial inquiries into the historical facts in the officer's employment records and statutory powers of arrest, and into the objective firearms standard for active duty officers." *Id.*   LEOSA's plain text "confers upon a specific group of individuals a concrete right the deprivation of which is presumptively remediable under Section 1983." *Id.* at 1054.

In addition, the conclusion that LEOSA creates an individual right to carry finds further support in Congress's purpose and in the context of LEOSA's enactment. *Id.* The legislative history reveals that Congress wanted to afford "retired law enforcement officers, in view of the nature of their past law enforcement responsibilities, the present means of self-protection and protection for the officer's family and, as an added benefit, to provide additional safety for the communities where the officers live and visit." *Id.*

In *Carey*, the Fourth Circuit held that LEOSA most directly falters on the third *Blessing* factor because "LEOSA cannot be read as 'unambiguously impos[ing] a binding obligation on the States' to issue concealed carry permits." *Carey*, 957 F.3d at 481 (quoting *Blessing*, 520 U.S.

43

341). The court explained that "the plain text of LEOSA . . . commit[s] entirely to the discretion of the states the decision of *whether* to issue identification and, should they choose to do so, *what* they may require of individuals seeking such a credential." *Id.* at 480 (emphasis in original). The court emphasized "LEOSA makes clear that the photographic identification described above 'must be issued *by the agency* from which the individual separated from service as a law enforcement officer.'" *Id.* (citation omitted).

As noted, the right at issue in *Carey* is not the same right at issue here. Plaintiffs do not seek to compel New Jersey to issue LEOSA-compliant identifications. While this Court understands that LEOSA contains no language obligating states to issue such identification under Section 926C(d), *Carey*, 957 F.3d at 480, LEOSA does prevent New Jersey from imposing further restrictions and from prosecuting QRLEOs who already possess proper identification. *Cf. Carey*, 957 F.3d at 480 ("[U]nder no circumstances does LEOSA obligate any state to *issue* its own concealed carry permit; but it does generally prevent states from prosecuting out-of-state officers who choose to carry under a LEOSA-compliant permit *already issued*."). Therefore, QRLEOs have the right to carry a firearm under LEOSA once they obtain the requisite identification under Section 926C(d), and this right to carry under Section 926C(a) preempts any conflicting state law. *See also* 18 U.S.C. § 927.

In conclusion, the Court finds that LEOSA is actionable under Section 1983. *See DuBerry*, 824 F.3d at 1054–55 ("Taken together, the LEOSA's plain text, purpose, and context show that Congress intended to create a concrete, individual right to benefit individuals like [the plaintiffs] and that is within 'the competence of the judiciary to enforce.'" (citation omitted)). The Court also finds that New Jersey has deprived Plaintiffs of their rights under LEOSA. Plaintiffs Bowen, Jakubiec, and Martinez are QRLEOs who possess proper LEOSA identification. FLEOA and

NJFOP also have members who are QRLEO and have LEOSA identification.   Accordingly, Plaintiffs are "entitled to judgment as a matter of law" because they are QRLEO who meet the identification requirements under LEOSA but have otherwise been deprived of their right to carry a firearm because they have either been denied a Permit or face the risk of prosecution under New Jersey law.  Fed. R. Civ. P. 56(a).

## IX.   Remedies

Plaintiffs seek injunctive relief as-applied to individuals who meet the requirements under LEOSA, 18 U.S.C. § 926C.  (Compl.  ¶¶ 73, 89.)  Having found that LEOSA preempts N.J.S.A. 2C:39-5, N.J.S.A. 2C:39-6(l), and N.J.S.A. 2C:39-3(f),  the Court will now address the adequacy of injunctive relief.

The party seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

Irreparable harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it." *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987).  "Plaintiffs need not wait until an enforcement action is initiated against them to demonstrate irreparable harm." *New Jersey Civ. Just. Inst. v. Grewal*, Civ. No. 19-17518, 2021 WL 1138144, at *7 (D.N.J. Mar. 25, 2021). Moreover, "numerous courts have held that the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable." *Id.* (quoting *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013)).  The Court concludes that

45

Plaintiffs face irreparable injury vis-à-vis the threat of prosecution under New Jersey law. Thus, Plaintiffs have met their burden of demonstrating irreparable harm and lack of an adequate remedy at law.

In addition, "[w]hen the government is the party opposing injunctive relief, the balancing of hardships and the public interest inquiry merge." *New Jersey Civ. Just. Inst*, 2021 WL 1138144, at *7 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "[A]lthough New Jersey has a significant interest in protecting the rights of its citizens through legislation, New Jersey's laws must 'give way' to conflicting federal law." *Id.* Thus, these factors weigh in favor of granting injunctive relief. The State of New Jersey is enjoined from arresting and/or prosecuting any QRLEO who has identification required under 18 U.S.C. § 926C(d) regardless of their residence or the agency from which they retired.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment (ECF No. 34) and **DENIES** the State's Cross-Motion for Summary Judgment (ECF No. 41). An appropriate Order will follow.

Date: **June 21, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
